**In the Matter of ESTABLISHMENT INSPECTION OF KEOKUK STEEL CASTINGS, DIVISION OF KAST METALS CORP.**

Civ. No. 80–45–D–1.

United States District Court,
S. D. Iowa,
Davenport Division.

June 3, 1980.

Marc W. Barta, John E. McFall and Jay C. Counts, Hewett, Johnson, Swanson & Barbee, Dallas, Tex., Charles O. Frazier, Keokuk, Iowa, for appellants.

Roxanne Barton Conlin, U. S. Atty., Christopher D. Hagen, Asst. U. S. Atty., Des Moines, Iowa, Southern District of Iowa, Howard Walderman, Florence E. Abrams, Washington, D. C., Guy Collier, Attys., Dept. of Health & Human Services for Government, Rockville, Md., for defendant.

## ORDER

STUART, Chief Judge.

The above captioned matter is before the Court on (1) the motion of Keokuk Steel Castings (Keokuk) to quash an ex parte warrant issued by U. S. Magistrate Longstaff authorizing the National Institute for Occupational Safety and Health (NIOSH) to inspect Keokuk's place of employment in Keokuk, Iowa, and (2) NIOSH's petition for an order to show cause why Keokuk should not be held in contempt for failure to obey the warrant for inspection. Hearing on said motions was held May 19, 1980. Keokuk appeared by its attorneys John E. McFall and Charles A. Frazier. NIOSH appeared by its attorneys Guy Collier, and Christopher D. Hagen, Assistant United States Attorney. After having heard the evidence and statements of counsel and after having read the briefs and the file and being fully advised in the premises, the Court finds as hereinafter set out.

On March 13, 1980 NIOSH received a written request from Mike Wright, an authorized representative of employees at Keokuk in Keokuk, Iowa for a health hazard evaluation inspection of the place of employment to determine if there was danger from exposure to potentially toxic or hazardous substances in several specified areas. Mr. Hartle of NIOSH sought permission to enter the place of employment and initiate the evaluation through Keokuk's Health and Safety Officer. Keokuk, through its attorney, advised Hartle that Keokuk would not permit NIOSH to inspect its premises without a warrant.

On March 19, 1980 U. S. Magistrate Longstaff issued the warrant, ex parte. Keokuk, however, would not allow employees of NIOSH to enter its premises unless they agreed to three specified conditions: (1) no private interviews with employees during working hours on the plant premises, (2) the only records to be reviewed were those required to be kept by OSHA regulations, and (3) no attachment of personal sampling devices to employees. Hartle informed Keokuk that the restrictions on the scope of the inspection were unacceptable and amounted to a refusal to comply with the terms of the warrant.

Keokuk filed a Motion to Quash on March 21, 1980. On March 31, NIOSH filed a Notice and Petition and Order and Certification of Facts requesting the Magistrate to certify to this Court the facts surrounding

the issuance of the warrant, its presentation, and the company's refusal to comply, and to enter an order requiring Keokuk to appear before this court to show cause why it should not be held in civil contempt.

Keokuk, in support of its Motion to Quash, argues that (1) no probable cause existed to support the issuance of the ex parte warrant; (2) no authority exists to allow NIOSH to obtain ex parte warrants; (3) the warrant was invalid because it was overbroad; and (4) Keokuk did not deny NIOSH entry pursuant to the warrant.

The Supreme Court in *Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), recognizing that most businessmen can be expected to consent to inspections without a warrant, stated that where there is no consent, the Fourth Amendment forbids warrantless searches of places of business as well as of residence. Id. at 312, 98 S.Ct. at 1820. The Court in *Barlow's* dealt specifically with the level of probable cause necessary for OSHA to obtain an administrative inspection warrant.

> [The Secretary's] entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S. [523] at 538 [87 S.Ct. 1727, 18 L.Ed.2d 930]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.

Id. at 320–21, 98 S.Ct. at 1824–25.

Keokuk contends that NIOSH is not proceeding under the probable cause standard of reasonable legislative or administrative standards for conducting the inspections because the inspection procedures in this case were initiated after NIOSH received specific complaints. Keokuk asserts NIOSH is not attempting to show the inspection was part of a reasonable administrative scheme. Such a contention, however, confuses the nature of the employee complaints in this case as well as the purpose of NIOSH. Neither the employees nor NIOSH allege specific violations of the Act. Although the Secretary of HEW is given the same authority to enter and inspect workplaces and question employees and employers by 29 U.S.C. § 669(b) as is given to the Secretary of Labor under section 657, NIOSH, unlike OSHA, is not concerned with the enforcement of the Act. NIOSH is an agency authorized by Congress to conduct research in the field of occupational safety and health. Furthermore, to read the language quoted from *Barlow's* as requiring the inspection to be pursuant to a general plan of enforcement would be adding additional criteria onto the "reasonable legislative or administrative standards" basis for probable cause that was delineated by the Supreme Court in *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967), and cited approvingly by the Court in *Barlow's*, 436 U.S. at 320–21, 98 S.Ct. at 1824–25.

Reasonable legislative standards for conducting a health hazard evaluation pursuant to a request are set forth in 29 U.S.C. § 669(a)(6):

> The Secretary of [HEW] . . . shall determine following a written request by any employer or authorized representative of employees, specifying with reasonable particularity the grounds on which the request is made, whether any substance normally found in the place of employment has potentially toxic effects in such concentrations as used or found . . . . . .

Reasonable administrative standards are set forth in 42 C.F.R. part 85. To be a valid request, § 85.3 requires the requestor to include pertinent general information as well as to "[s]pecify with reasonable particularity the nature of the conditions, circumstances or other grounds on which the request is made." 42 C.F.R., § 85.3(a)(3) (1979). Then § 85.4 requires NIOSH to conclude that there is reasonable cause to believe that the requested investigation is necessary. Thus, reasonable legislative and administrative standards have been established.

■ These standards have been met in the instant case. Mike Wright, as an authorized representative of the organization representing the employees for purposes of collective bargaining, has the authority under § 85.3 to request an investigation. He need not be, as Keokuk contends, an authorized representative of the local bargaining unit. NIOSH has always interpreted § 85.3 as permitting requests to be filed by authorized representatives or officers of either the local or the parent international union. NIOSH's administrative interpretation of its own regulation is accorded "controlling weight". *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Bowles v. Seminole Rock and Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Furthermore, Wright need not name the specific employees who have complained or have personal knowledge of the conditions.

■ The grounds for the request were set forth with reasonable particularity in the written request which alleged employee exposure to "coremaking chemicals used in the Isocure( ) system, including isocyanates, aliphatic amines, and others". Wright also alleged employees are suffering from "extreme irritation, nausea, headaches, blurred vision, and other symptoms" and are concerned with "potential long-term lung damage from the isocynate systems used, permanent eye, heart, and other damage from aliphatic amines, and possible formation of carcinogenic aeromatic amines from the coremaking process and during pouring."

He also requested the inspection of specified parts of the employment premises. Hartle evaluated the request pursuant to 42 C.F.R. § 85.4. The above information was included in the application for a warrant. The Magistrate concluded that the established legislative and administrative standards for conducting an inspection met the probable cause standard as articulated in *Barlow's.* His decision is entitled to significant weight upon review by this Court. *Spinelli v. U. S.,* 382 F.2d 871, 884 (8th Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ Keokuk also contends that NIOSH may not obtain ex parte warrants relying upon *Barlow's,* supra, and *Cerro Metal Products v. Marshall,* 620 F.2d 964 (3rd Cir. 1980). Such reliance is misplaced. The Supreme Court in *Barlow's* did not state that ex parte warrants were improper. In fact, the Court in dictum recognized that if OSHA properly authorized its compliance officers to seek ex parte inspection warrants, such authority would be constitutional. *Barlow's,* 436 U.S. at 320, 98 S.Ct. at 1824.

The decisive factor in *Barlow's* and *Cerro* was the existence of the administrative regulation contained in 29 C.F.R. Section 1903.4 stating that upon an employer's refusal to allow an inspection, the Compliance Safety and Health Officer shall among other things report the refusal. The Regional Solicitor shall then "promptly take appropriate action, including *compulsory process,* if necessary." (Emphasis added.) This regulation was characterized by the government in arguments before the Supreme Court in *Barlow's* as providing for adversary process. 620 F.2d at 976. NIOSH does not have a regulation excluding ex parte warrants and is not precluded from seeking ex parte warrants because of an OSHA regulation interpreted to preclude such an option from OSHA Compliance Officers. Most courts hold that OSHA may now obtain warrants ex parte. *Marshall v. W and W Steel,* 604 F.2d 1322, 1325–26 (10th Cir. 1979); *Marshall v. Sauget Industrial Research and Waste Treatment Ass'n.,*

477 F.Supp. 88, 90 (S.D.Ill.1979). Contra, *Cerro Metal Products v. Marshall*, 620 F.2d 964 (3rd Cir. 1980); *Marshall v. Huffhines Steel Co.*, 478 F.Supp. 986 (N.D.Tex.1979).

Although NIOSH regulations do not expressly permit it to obtain ex parte warrants, there is no authority to suggest that a regulation is necessary before administrative inspection warrants can be obtained ex parte. The Supreme Court in *Barlow's* indicated that such a regulation is not necessary. 436 U.S. at 318–19, 98 S.Ct. at 1823–24.

Keokuk's contention that 42 C.F.R. § 85.-6(b) expressly forbids ex parte warrants is without merit. Section 85.6 speaks of notice in the context of visits to the place of employment and not in obtaining warrants.

Keokuk next contends that the danger of being found in contempt, especially criminal contempt for failure to comply with the warrant presents a strong policy reason for not allowing NIOSH to obtain ex parte administrative warrants. This danger is overstated by Keokuk and the argument regarding criminal contempt is spurious since NIOSH petitioned for an order to show cause for civil contempt.

Keokuk also maintains that the warrant was overbroad and that NIOSH was not denied entry to Keokuk's work premises for the purposes of conducting the inspection. These contentions will be dealt with together since they involve the three conditions imposed by Keokuk upon NIOSH's entry to and inspection of the plant. First, Keokuk would not allow employee interviews during working hours or on the plant premises. The warrant expressly authorized employees of NIOSH to enter the plant premises during the regular working hours for the purpose of conducting private interviews of Keokuk employees. This is consistent with 42 C.F.R. § 85.5(a). During the oral arguments NIOSH recognized the disruptive effect personal interviews might have upon production and agreed to make all reasonable efforts to accommodate Keokuk.

Keokuk restricted the inspection to the records that the company is required to keep by OSHA regulations. Again the warrant provided for "examination or personal records, medical records *or any other records* containing employee exposure data of employees in these areas . . . ." (Emphasis added.) Therefore the conditions imposed by Keokuk amounted to a refusal to honor the warrant. The third restriction was that NIOSH not be permitted to attach personal sampling devices to employees. The warrant authorized "the taking of representative breathing zone and areawide air samples and bulk samples of substances, as authorized by 42 C.F.R. § 85.7(c) . . . ." Section 85.7(c) states, "NIOSH officers are authorized to collect environmental samples and samples of substances. . . ." Although § 85.7 does not expressly mention personal breathing zone sampling devices, the regulation anticipates the agency using reasonable means to carry out its purposes. NIOSH asserted in its Supplemental Brief in Opposition to the Motion to Quash that use of the device must be implied "since there is no other way to accurately take this type of sample". Keokuk relies on *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979) to support its alleged right to condition entry upon NIOSH agreeing not to use personal sampling devices. The court in *Plum Creek* did not quash a warrant which stated that the authorized inspection included "air sampling and noise level testing in a reasonable manner and to a reasonable extent . . .". Id. at 1286. The inspection pursuant to the warrant included the use of personal air sampling devices. That court refused to enjoin the defendant company from adhering to its policy of forbidding employees from wearing such devices. Keokuk has not asserted that it has a similar company policy. NIOSH indicated that the employee could voluntarily decide whether to wear the sampling device. The employees should be specifically advised of that option.

■ After refusing to allow NIOSH entry except under the restrictions stated, Keokuk promptly sought judicial relief by its motion to quash. Since the warrant did not expressly mention the use of the devices to obtain the air samples and other sampling

devices do exist, Keokuk's refusal to honor the warrant until clarification was not unreasonable. Therefore, Keokuk is not held in contempt of court. Since probable cause existed to support the issuance of an ex parte warrant, the scope of which has now been clarified to include the use of personal air sampling devices, Keokuk is ordered to permit authorized employees of NIOSH to enter the workplace and conduct the inspection as set out in the warrant.

IT IS THEREFORE ORDERED that Keokuk's motion to quash the warrant for inspection is denied.

IT IS FURTHER ORDERED that Keokuk shall not be held in contempt for failure to permit entry under the warrant prior to the Court's determination of its legality.