No. 55,703

LYLE SIPLE and BETTY SIPLE, *Appellees*, v. CITY OF TOPEKA, KANSAS, *Appellant*.

(679 P.2d 190)

Opinion filed March 24, 1984.

*Richard E. Jones,* deputy city attorney, argued the cause, and *Tom Stratton,* legal intern, was with him on the briefs for the appellant.

*Alan L. Tipton,* of Hamilton, Peterson, Tipton & Muxlow, of Topeka, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

LOCKETT, J.: The Siples, plaintiffs, brought this action in tort for damages to plaintiffs' car, premised on the duty owed by the City of Topeka, defendant, to inspect and remove an allegedly defective tree. Defendant claimed it was exempted from tort liability by the Kansas Tort Claims Act. In a trial to the court, judgment was granted in favor of plaintiffs. Defendant appeals.

On June 21, 1981, the Siples were returning to their home in Topeka from an overnight camping trip in their five-week-old Chevrolet Chevette. The Siples parked their Chevette in front of their home. A violent storm struck in the early morning of June 21, 1981. A large limb from a soft maple tree located across the street fell, crushing the Siple's Chevette. It buried the automobile. The top of the car buckled, the trunk was smashed, the frame bent, and the interior saturated with rainwater.

Prior to June 21, 1981, many limbs of varying sizes had fallen from the same tree. Mrs. Siple had viewed the tree after limbs had fallen. She observed hollow spots in the tree where the limbs had broken and a black sappy liquid oozing out the base of the tree. Because of the danger caused by the falling limbs, the Siples and other neighbors had called the City Forestry Department a number of times prior to June 21, 1981, requesting the department to inspect the tree.

The city forester testified that due to reports of falling limbs, he had inspected the tree prior to June 21, 1981. The forester conducted a visual inspection. During that inspection of the tree, he observed several rotted areas on the tree trunk. The inspector determined this was to be expected on a twenty-year-old soft maple. After the June 21, 1981, storm, the city forester was called again to inspect the tree. He observed a black liquid on the tree. Later in 1982, at the request of the property owner, the soft maple tree was cut down. At the trial, an expert witness testified a visual inspection of the tree was insufficient under the circumstances.

After the tree limb had fallen on the vehicle, Siples' insurer inspected the damaged car. Siples' insurance company wrote a check for $2,145.64 for damages to the vehicle. The Siples were concerned about permanent damage to the frame and interior of their car. Determining the car could not be restored to its previous condition, the Siples purchased a new car. The plaintiffs traded in their old car, the insurance check and $927.00 to purchase a new 1981 Chevette.

The Siples sued the City of Topeka for damages to their car caused by the falling tree limb. The City defended, claiming it was exempt under the Kansas Tort Claims Act, K.S.A. 1983 Supp. 75-6101 *et seq*. The trial court found for the plaintiffs and awarded damages of $3,072.64. The City of Topeka appeals.

The trial court made these conclusions of law:

"1. The parties are the proper parties to bring this action and the City is responsible for the entire loss of $3,072.64.

"2. Substantial facts in this case indicate that the windstorm alleged to be an intervening cause was not such an intervening cause in light of the prior knowledge of the City that the tree was defective and had falling limbs and in light of the dispute about the severity of the windstorm compared to others the tree had withstood.

"3. The incident involved the performance or nonperformance of a non-discretionary non-governmental proprietary function of the City and the City is therefore liable and not immune from the damages which occurred to the Plaintiffs' property. The Court can find very little discretion or governmental functioning on the part of the City in this transaction. The inspection or lack of inspection or negligent inspection was a ministerial act done on the operational rather than the planning level by the City Forester or employees under his jurisdiction. When the City undertakes to perform this type of function, it should do so properly and comprehensively and not in a negligent manner as occurred in this particular instance. The Court is satisfied from the preponderance of evidence that this transaction involved duties of the City which were not statutorily immune. An early illustration of City responsibility in this area is *Turner v. City of Wichita*, 139 Kan. 775 [, 33 P.2d 335 (1934)], wherein the City was held responsible in a similar factual circumstance.

"IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that Plaintiffs be entitled to judgment against the City of Topeka in the amount of $3,072.64 plus interest and costs."

The City contends, although it is the duty of the city forester to conduct inspections of trees and determine if a tree or trees endanger the public safety, the city employee's inspection, lack of inspection or negligent inspection of the tree or trees is a duty which is specifically exempted from liability under K.S.A. 1983 Supp. 75-6104(j).

The historical origin of the governmental immunity doctrine has been discussed in many prior cases. The doctrine of governmental immunity was held to exempt governmental entities from privately instituted civil suits without the expressed consent of the sovereign. The doctrine was founded upon the belief the courts, which derived their power from the sovereign, could not have been empowered to enforce such authority against the

sovereign; that the king could do no wrong, nor could he authorize such conduct while acting in his sovereign capacity, for no man can do by his agents and officers that which he cannot do by himself. Under the doctrine of immunity for governmental officers, the common law recognized the necessity of permitting public officials to perform their official duties free from the threat of personal liability. *Brown v. Wichita State University,* 217 Kan. 279, 540 P.2d 66 (1975), *modified on reh.* 219 Kan. 2, 547 P.2d 1015 (1976).

The doctrine of governmental and sovereign immunity, as noted in *Brown,* was originally of judicial origin in Kansas. Unless a state is prohibited by its constitution it may waive its privileges and immunities from suit and permit itself to be made a defendant in a private suit. Consent of the state to be sued upon claims against it or its employees by private persons is generally given expressly by statutory enactment. The State, as the creator of municipal corporations, may by statute impose obligations or liabilities upon the municipal corporation which otherwise would not exist unless such action is prohibited by the State Constitution.

The Kansas Tort Claims Act was passed to permit recovery of damages from a governmental entity when damages are "caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." K.S.A. 1983 Supp. 75-6103. Exceptions to this general liability are set forth in K.S.A. 1983 Supp. 75-6104. Here the City claims the exception exempting it from liability is contained in 75-6104(j) which relates to inspections. K.S.A. 1983 Supp. 75-6104 provides in pertinent part:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(j) the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmental entity, to determine whether the property complies with or violates any law or regulation or contains a hazard to public health or safety."

Inspection laws are regulations designed to safeguard the public against fraud, injury and to promote the public health, safety and welfare. They provide for the examination or inspec-

tion of property by an authorized public official. The public official is to examine and determine whether the standards prescribed by the regulations are complied with.

Subject to the paramount authority of the legislature, the enactment and enforcement of inspection laws are within the police power of the state. The power to enact inspection laws may be conferred upon municipal corporations by the state.

K.S.A. 12-3207 gives a limited title to the trees on property abutting upon streets to the abutting property owners. The statute also grants the City certain rights. The statute provides:

"The owners of property abutting upon streets, avenues and boulevards in cities shall have such title to and property in growing trees, shrubbery and the parking situated in front of such real estate between the curb line and the property line as to enable the owners, in case of injury to or destruction of such trees, shrubbery and parking, to recover from the person, company or corporation causing said injury or destruction the full damages which the abutting property in front of which they are situated may sustain by reason thereof, and such abutting property owner shall also have the right of action in any court of competent jurisdiction to enjoin injury to or destruction of such trees, shrubbery and parking, except that no recovery or injunction shall be had against the city in the making of public improvements or in any other reasonable exercise of its authority over such streets, alleys, avenues or boulevards or over the trees and shrubbery located thereon."

See *Mead v. City of Coffeyville,* 152 Kan. 799, 107 P.2d 711 (1940).

In 1961 our legislature enacted K.S.A. 12-3201, which provides:

"The governing body of any city is hereby authorized to regulate, by ordinance, the planting, maintenance, treatment and removal of trees and shrubbery upon all streets, alleys, avenues and boulevards within such city. Upon the failure of the owner of property abutting streets, alleys, avenues and boulevards to comply with such regulations, and after reasonable notice the city may trim and maintain or, where necessary, remove such trees and shrubbery and assess the costs of such work against the abutting property as a special assessment."

In 1975, the City of Topeka adopted Section 45-18 of the Code of the City of Topeka, which states in part:

"It shall be the function of the division of forestry under the administration and supervision of the city forester to administer and supervise planting, maintenance, protection, spraying, fertilizing, treating, pruning, trimming and removal of trees, hedges, shrubs, bushes and vines upon public streets, parkways, avenues, alleys and other public property and of trees, hedges, shrubs and bushes upon private property where they endanger other private or public trees, hedges,

shrubs, bushes and vines or when they endanger the public safety or hinder the use of public property."

The Siples believe that the legislature did not intend "inspection" to be so broadly defined as to include the city forester's action. No Kansas cases have been found which define inspection in this context. The Siples claim that the inspection contained within the statute was intended to apply only to building inspections. This is incorrect. Kansas statutes contain infinite requirements for inspections in addition to building inspections. Such inspections range from inspection of apiaries for disease detection and control (K.S.A. 2-413), to working conditions of apprentices and minors (K.S.A. 44-645). Such inspections are required by the State or a municipal corporation to determine whether property complies with or violates any law or regulation of the governmental entity or if the property constitutes a hazard to public health or safety. When an employee of the governmental entity is conducting an inspection within the scope of his or her employment, neither the governmental entity nor the employee is liable for the employee's failure to make an inspection or for making of an inadequate or negligent inspection under K.S.A. 1983 Supp. 75-6104(j).

First, we must determine what is an inspection. "Inspection" is derived from a Latin word "inspicere," to look into. 21A Words and Phrases p. 462. Black's Law Dictionary 716 (5th ed. 1979) defines inspection as follows:

"To examine; scrutinize; investigate; look into; check over; or view for the purpose of ascertaining the quality, authenticity or conditions of an item, product, document, residence, business, etc."

Inspection as used in K.S.A. 1983 Supp. 75-6104(j) means investigation, or examination for the purpose of determining whether any property other than property of a governmental entity complies with or violates any law or regulation of the governmental entity or constitutes a hazard to public health or safety.

Having defined inspection, we must now determine whether or not the city forester's action in this case constituted an inspection. The trial court determined the City was liable for the forester's negligent act in failing to remove a tree that endangered the public safety. The City had received numerous complaints; therefore, it had reasonable notice of the existing hazard to public safety and failed to act. The court determined such

action was not within the exception to liability provided by K.S.A. 1983 Supp. 75-6104(j). We do not agree.

Title to the tree was in the owner of the land abutting the street. K.S.A. 12-3207. The legislature had authorized the City of Topeka to regulate the maintenance or removal of the tree. K.S.A. 12-3201. The City of Topeka had adopted an ordinance authorizing its division of forestry, under the administration and supervision of the city forester, to remove trees that endanger the public safety.

K.S.A. 12-3201 requires certain steps be taken by a city prior to removal of a tree belonging to an owner of land abutting a street: (1) the City must adopt an ordinance for removal of a tree; (2) the City or its employee must determine if the tree violates the ordinance; (3) if the tree violates the ordinance, reasonable notice of the violation must be given to the person owning the tree; and (4) should the owner of the tree fail to comply with the regulation after reasonable notice, the City may remove the tree and assess the cost of such work against the abutting property as a special assessment.

The city forester was notified by the Siples and their neighbors of a tree which endangered public safety because tree limbs were falling to the ground. How did the forester determine whether the tree endangered the public safety? The city forester went to the location, visually examined and inspected the tree, determined the tree was not endangering the public safety and took no further action. The forester's inspection was conducted within the scope of his employment. That inspection, found by the trial court to have been done in a negligent manner, did not subject the City or the forester to a private claim for damages to the Siples' automobile. Such inspection is one of the listed exceptions from liability granted governmental entities or its employee under K.S.A. 1983 Supp. 75-6104 for the employee's acts or omissions.

Statutes, ordinances and codes requiring inspections are enacted by governmental entities to secure for the public at large the benefits of such enactments. The legislature determined inspection activities are to be encouraged rather than discouraged by the imposition of civil tort liability. Inspections under such statutes, ordinances and codes are not a private service to the owner or occupier of the property. Inspection laws do not create a duty to an individual. K.S.A. 1983 Supp. 75-

6104(*j*) precludes an individual from recovering damages caused by a governmental employee acting within the scope of his employment in failing to make, or making an inadequate or negligent inspection.

Other points are raised by the parties in the appeal. Since we have determined that the City of Topeka is immune under K.S.A. 1983 Supp. 75-6104(*j*) for the negligent inspection by its employee, the other points raised by the parties are moot and will not be discussed in this opinion.

Judgment is reversed.

PRAGER, J., dissenting.