(799 P.2d 521)

No. 64,653

KENNETH D. GRIFFIN, *Appellee,* v. STATE OF KANSAS, *Appellant.*

Opinion filed October 19, 1990.

*Brian Cox,* of Kansas Department of Revenue, for appellant.

*Craig J. Altenhofen* and *Sharon Wright Kellstrom,* of Harper, Hornbaker & Altenhofen, Chartered, of Junction City, for appellee.

Before GERNON, P.J., REES and DAVIS, JJ.

GERNON, J.: Following an adverse jury verdict, the State of Kansas appeals from the trial court's denial of its motions for summary judgment and dismissal. We affirm.

This case was filed as a damage action against the State of Kansas and the Kansas Department of Revenue. A trial resulted in a jury verdict in favor of the plaintiff, Kenneth D. Griffin, against the State of Kansas. The jury assessed total damages of $7,000 and apportioned fault as follows: Griffin, 20%; Officer Rivera, 15%; and the State of Kansas, 65%.

The facts are not in dispute. In April of 1988, there were at least two individuals named Kenneth D. Griffin residing in the State of Kansas, each possessing a valid Kansas driver's license. One Kenneth D. Griffin resided in Junction City, and the other resided in Penokee.

The Kenneth D. Griffin living in Penokee had been convicted of driving on a suspended license in February of 1987. In that same month, the Division of Vehicles sent a notice to him stating that his driver's license would be suspended unless his insurance company provided proof of insurance. The notice erroneously listed his driver's license number as Q4J1V5. Unfortunately for the Kenneth D. Griffin living in Junction City, this was his license number.

In April of 1988, the Kenneth D. Griffin living in Junction City was stopped for speeding. The officer who stopped him, Nelson Rivera, ran a computer check on license number Q4J1V5, which indicated that the license was suspended. Based upon this information, Rivera arrested Griffin. Griffin was charged with driving on a suspended license in violation of a municipal ordinance of the City of Junction City.

The Department of Revenue had mistakenly suspended the license of the Griffin living in Junction City based upon information received concerning the individual named Griffin living in Penokee. The pretrial order in this case states, "[D]efendants stipulate to the following: A. the Division of Vehicles of the Kansas Department of Revenue, in suspending the driver's license of a Kenneth D. Griffin residing in Penokee, Kansas, placed the 'sus-

pension' notation in its central computer file under the plaintiff's name [Kenneth D. Griffin of Junction City, Kansas]."

The charge against Mr. Griffin of Junction City was dismissed by motion of the city attorney. The Driver Control Bureau action and the entry thereon suspending his license was eventually "deleted."

Griffin filed a civil action against the Kansas Department of Revenue and the State of Kansas. Essentially, Griffin alleged .hat the Kansas Department of Revenue was negligent and that he had suffered humiliation, embarrassment, emotional distress, and loss of reputation. He also alleged that, as a result of information provided by the State of Kansas, he was arrested falsely.

The defendants filed various pretrial motions, including a motion for summary judgment, a motion for partial summary judgment, and a "partial motion to dismiss." The motion for summary judgment argued that the defendants were immune from suit under K.S.A. 75-6104(j) (Ensley 1984), now K.S.A. 75-6104(k) (Ensley 1989), the inspection exception to the Kansas Tort Claims Act. The motion for partial summary judgment argued that Officer Rivera lacked statutory authority to arrest Griffin for driving on a suspended license and, therefore, the defendants could not be held liable based upon Rivera's actions. The partial motion to dismiss contended that "mental damages" were not recoverable in the action.

Upon hearing the motions, the court dismissed the Kansas Department of Revenue from the case and dismissed the cause of action based upon false arrest. The remaining motions filed by defendants were denied, and the State of Kansas was left as the sole defendant.

The trial court allowed the case to proceed to trial on the negligence issue alone with the result as previously noted.

The State of Kansas raises three issues on appeal:

(1) The trial court erred in denying the State's motion for summary judgment based upon the inspection exception to the Kansas Tort Claims Act;

(2) the court erred by denying the State's motion to dismiss the claims for "mental damages;" and

(3) the court erred by denying the State's motion for partial summary judgment of the damages resulting from the alleged illegal arrest of Griffin.

### KANSAS TORT CLAIMS—INSPECTION EXCEPTION

K.S.A. 75-6104 provides in part:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(k) the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmental entity, to determine whether the property complies with or violates any law or regulation or contains a hazard to public health or safety."

The State argued that its only negligence, if any, was inadequately inspecting the notice of a conviction it received concerning Kenneth D. Griffin of Penokee. Griffin's response to this argument states: "The error was not in the inspection of the arrest record but in the preparation of the defendant's order of suspension." The trial court rejected the State's interpretation of the statute, concluding that "the defendant in this motion is placing a very strained and inappropriate construction on the term inspection." We agree with the trial judge.

The interpretation of a statute is a question of law. *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 (1984). Appellate review of questions of law is unlimited. *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

The rules of statutory construction are well settled and include:

"The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. . . . Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citations omitted.] . . . A construction which renders part of a legislative act surplusage is to be avoided if reasonably possible." *State v. Adee*, 241 Kan. 825, 829, 740 P.2d 611 (1987).

"The Kansas Tort Claims Act is an open-ended act making governmental liability the rule and immunity the exception." *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 94, 785 P.2d 986 (1990).

K.S.A. 75-6103(a) provides:

"Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."

The Kansas Supreme Court has considered the meaning of the inspection exception to the Kansas Tort Claims Act. In *Siple v. City of Topeka*, 235 Kan. 167, 172, 679 P.2d 190 (1984), the court announced the following definition of "inspection" under the Act: "Inspection as used in K.S.A. 1983 Supp. 75-6104(j) means investigation, or examination for the purpose of determining whether any property other than property of a governmental entity complies with or violates any law or regulation of the governmental entity or constitutes a hazard to public health or safety."

The court concluded that a visual examination of a tree by a City Forestry Department employee was within the exception, where a tree limb fell on the plaintiff's car during a subsequent storm. 235 Kan. at 168, 173. As other examples of inspections covered by the provision, the court mentioned building inspections, working conditions of apprentices and minors, and inspection of apiaries for disease detection and control. 235 Kan. at 172. The court also explained:

"Inspection laws are regulations designed to safeguard the public against fraud, injury and to promote the public health, safety and welfare. They provide for the examination or inspection of property by an authorized public official. The public official is to examine and determine whether the standards prescribed by the regulations are complied with." 235 Kan. at 170-71.

We agree with the trial court's conclusion concerning how this statute ought to be construed. The language of the provision indicates the legislature did not create immunity for all inspections or all governmental actions that arguably result from an inspection function. By its own terms, K.S.A. 75-6104(k) only exempts inspections of property which are for the purpose of determining compliance with a law or for assessing a hazard to public health or safety.

The inspection in this case was not conducted to determine whether the property in question, a notice of conviction, complied

with the law or presented a hazard to the public. Rather, the abstract was examined to determine if the license of Kenneth D. Griffin of Penokee was subject to administrative action.

We conclude that the injury to Griffin did not result from an inspection within the meaning of K.S.A. 75-6104(k).

## CLAIM FOR MENTAL DAMAGES

The State argues that the trial court erred by denying its motion to dismiss the claim for "mental damages." Both sides rely upon the Kansas Supreme Court decision in *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984). The State argues that the *Bowman* decision only authorizes recovery of mental distress damages in cases of wanton conduct. Griffin's position is that the State has misread *Bowman* and, therefore, "seriously [misled] the court as to the holding." Griffin's position is that a deprivation of freedom itself constitutes a type of physical injury.

In *Bowman*, the court reversed the trial court's entry of partial summary judgment on a claim for mental distress damages. In *Bowman*, the plaintiff was arrested after his attorney failed to seek or obtain a continuance in a criminal case. Syllabus ¶ 3 of *Bowman* states, "One being negligently deprived of his freedom suffers an injury which could cause mental distress."

The State's analysis of *Bowman* also tends to ignore the language contained in Syllabus ¶ 4 and elsewhere in the decision which states: "Whether a client was injured and suffered mental distress when deprived of his freedom because his attorney failed to act or acted in a wanton manner is a matter of fact for the jury to determine." 235 Kan. at 878.

Recovery of mental distress damages on a claim of false arrest or imprisonment has been recognized in this state for many years. *Lonergan v. Small*, 81 Kan. 48, 51, 105 Pac. 27 (1909); *Zimmerman v. Knox*, 34 Kan. 245, 253, 8 Pac. 104 (1885).

We conclude that the decision in *Bowman* controls the present case. *Bowman* essentially holds that a private individual may be liable for mental distress resulting from negligence that causes the false arrest of another person. 235 Kan. at 877. Under the Kansas Tort Claims Act, the State of Kansas is liable for damages if a private person would be liable under the same circumstances. K.S.A. 75-6103(a). We agree with the ruling of the trial court

which denied the State's motion to dismiss the claim for damages based upon mental distress.

PARTIAL SUMMARY JUDGMENT MOTION FOR ILLEGAL ARREST DAMAGES

The State moved for partial summary judgment, maintaining that the arrest made by Officer Rivera was illegal. The State avows that the arrest was not authorized by K.S.A. 1989 Supp. 12-4212. The State further asserts that K.S.A. 22-2401 is either inapplicable or, if it is applicable, it did not authorize the arrest in this case.

The court ruled that "Officer Rivera acted within the scope of his . . . duties and authority." Rivera's negligence was compared by the jury.

K.S.A. 22-2401 states in relevant part: "A law enforcement officer may arrest a person under any of the following circumstances: . . . . (d) Any crime, except a traffic infraction, has been or is being committed by the person in the officer's view."

The State argues K.S.A. 22-2401 lacks any language indicating it is applicable to municipal law enforcement officers. However, municipal police are included in the Chapter 22 definition of "law enforcement officer." K.S.A. 1989 Supp. 22-2202(13) provides in part:

" 'Law enforcement officer' means any person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas or ordinances of any municipality thereof or with a duty to maintain or assert custody or supervision over persons accused or convicted of crime . . . ."

Both sides agree that driving on a suspended license in violation of a municipal ordinance does not constitute a traffic infraction under the terms of K.S.A. 1989 Supp. 8-2116 and K.S.A. 1989 Supp. 8-2118.

The State's argument seems to focus on excepted parts of statutes, while rejecting others, or reading the statutes together.

For example, the State contends that the language of K.S.A. 22-2102 limits the scope of authority in this case. K.S.A. 22-2102 states: "The provisions of this code shall govern proceedings in all criminal cases in the courts of the state of Kansas, but shall have application to proceedings in police and municipal courts only when specifically provided by law."

The State argues that K.S.A. 22-2102 is an "applicability" statute which must be satisfied before the definitions in K.S.A. 22-2202 ought to be considered. We conclude the State's argument is flawed for several reasons.

First, the State's position is contrary to the express language of K.S.A. 22-2201(1), which provides: "In interpreting this code, such words and phrases as are defined in this article shall be given the meanings indicated by their definitions, unless a particular context clearly requires a different meaning."

Second, the State's position is contrary to the rules of statutory construction. This court must look to ascertain legislative intent and read the entire act to determine if the act and its parts are consistent, harmonious, and sensible. *State v. Adee*, 241 Kan. at 829.

In addition, the State's position ignores K.S.A. 12-4111, which indicates that various portions of Chapter 22 are applicable to municipal court officers. K.S.A. 12-4111 states in part: "The powers of law enforcement officers with respect to the code of criminal procedure shall not be reduced by this code."

We also reject the State's argument that K.S.A. 1989 Supp. 12-4212 provides the exclusive arresting authority for municipal police. This statute contains no language of exclusivity.

In addition, the available case law authority supports the conclusion that K.S.A. 22-2401 is applicable to municipal police officers. In *City of Bonner Springs v. Bey*, 236 Kan. 661, 694 P.2d 477 (1985), the Kansas Supreme Court considered the validity of an arrest by a municipal police officer based upon information from another Kansas law enforcement agency concerning an outstanding warrant. The statutory provisions which potentially authorized the arrest were K.S.A. 12-4212(b) and K.S.A. 22-2401(b). In upholding the validity of the arrest, the court concluded:

"The prosecution must merely prove the police officer determined a warrant for the individual's arrest had been issued by a municipal court in this state, pursuant to K.S.A. 12-4212, or that the officer had probable cause to believe a warrant for the individual's arrest had been issued in this state or in another jurisdiction for a felony committed therein, pursuant to K.S.A. 22-2401(b)." 236 Kan. at 662-63.

In determining the validity of an arrest by a municipal police officer, this court has also applied the provisions of K.S.A. 22-

2401. *State v. Latimer*, 9 Kan. App. 2d 728, 730, 687 P.2d 648 (1984). It should be noted that the decisions in *Bey* and *Latimer* do not indicate any direct challenge to the applicability of K.S.A. 22-2401 by the defendant in those cases.

The State next alleges that the arrest was not valid because the offense of driving on a suspended license was not committed "in the officer's view," as required by K.S.A. 22-2401(d).

This court has held: "[T]he validity of a warrantless arrest depends upon whether, at the moment the arrest was made, the officer had probable cause to make it." *State v. Press*, 9 Kan. App. 2d 589, 592, 685 P.2d 887, *rev. denied* 236 Kan. 877 (1984).

The Kansas Supreme Court, in *State v. Merrifield*, 180 Kan. 267, 269-70, 303 P.2d 155 (1956), approved an arrest for driving on a suspended license where the sheriff saw the defendant driving and had prior knowledge that his license was suspended.

It is impossible to "view" a suspension in the abstraction. What can be viewed is an order suspending the license or a license which has been suspended. Logic demands that we recognize the reasonableness of interpreting "in the officer's view" in driving-while-suspended cases to mean that the officer viewed the person, whose license has been suspended, driving.

The State's position would result in a position where a person could only be arrested for driving on a suspended license in violation of a municipal ordinance if the officer had probable cause to believe evidence would be lost or the person could not be apprehended at a later time. K.S.A. 22-2401(c)(2)(A).

Finding no merit on appeal to any issue raised by the State, we affirm.