(806 P.2d 479)

No. 64,856

MID AMERICAN CREDIT UNION, *Appellant/Cross-appellee*, v. BOARD OF COUNTY COMMISSIONERS OF SEDGWICK COUNTY, KANSAS, *et al.*, *Appellees/Cross-appellants*.

Petition for review denied May 9, 1991.

Opinion filed February 15, 1991.

*Kenneth H. Jack* and *Eric D. Bruce*, of Bruce & Davis, of Wichita, for the appellant/cross-appellee.

*Clark V. Owens*, of Wichita, for appellees/cross-appellants Board of County Commissioners of Sedgwick County and Jerry McCoy, as county treasurer of Sedgwick County, Kansas.

*Brian Cox*, special assistant attorney general, for appellee/cross-appellant Kansas Department of Revenue.

Before DAVIS, P.J., LEWIS, J., and FLOYD H. COFFMAN, District Judge Retired, assigned.

COFFMAN, J.: Mid American Credit Union (Mid American) appeals the order of the district court granting summary judgment

to the Board of County Commissioners of Sedgwick County; the county treasurer, Jerry McCoy; and the State of Kansas by and through the Kansas Department of Revenue (KDR). Mid American claims that these defendants were negligent in failing to list its lien on a certificate of title issued to Christopher Woods. The Board and County Treasurer McCoy filed one brief with the same arguments and will be referred to as "the county." The county and the KDR cross-appeal the court's finding that the Kansas Tort Claims Act does not protect them. The KDR also cross-appeals the court's finding that it was a proper party to the action and the court's modification of an order without notice to the KDR.

In 1985, Mid American loaned Christopher Woods money to purchase a 1980 Corvette and received a security interest in the car. Mid American promptly sent a notice of its security interest to the KDR pursuant to what is now K.S.A. 1990 Supp. 8-135. In February 1986, the KDR informed Mid American by letter that no one had applied for a certificate of title and, since 30 days had passed, the notice of security was being removed from its files. Woods neglected to file for a title and, by June 1986, had defaulted on the loan. The credit union repossessed the automobile and secured a new certificate of title.

In April 1987, Mid American negotiated a sale of the vehicle to Woods and again assigned the title to Woods. The assignment, contained on the back of the certificate of title, again listed Mid American's lien. This time an application for title was completed and signed by Woods. The trial court found that an employee of the county treasurer's office had typed the application for Woods based on the certificate of title, Mid American's letter, and answers given to the employee by Woods. The application incorrectly stated there were no security liens. The application for title was sent to the KDR, which issued a certificate of title to Woods stating there were no liens.

Woods assigned title to Candace McFadden in July 1987, who filed an affidavit with the KDR stating the car was a gift from her father. No lien was noted on her certificate of title. The title was then assigned in sequence three times to different assignees. Mid American's lien was never listed on the subsequent titles.

Woods again defaulted on the loan and has since disappeared. Mid American alleges that the defendants' failure to note its lien on Woods' certificate of title as specified by K.S.A. 1990 Supp. 8-135(c)(1) caused it damage in the amount of $7,430, the value of the 1980 Corvette.

The county and the KDR filed motions for summary judgment, which the trial court granted. In reaching its decision, the court found that Mid American had not perfected its lien; that the county treasurer was not acting on behalf of the department but as an agent for the applicant Woods, who is solely responsible for the failure of the certificate of title to reflect the credit union's lien; and that, since Woods was a thief, he could not pass good title and Mid American still had a valid interest in the car and had suffered no damage. The court further held the Kansas Tort Claims Act did not protect the defendants from liability.

We first address the court's finding that the county treasurer, in completing the application for title, was acting as Woods' agent and, thus, the treasurer's duty was only to Woods, who was solely responsible for plaintiff's damage.

"Actionable negligence must be based on a breach of duty. Existence of duty is a question of law." *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 297, 777 P.2d 839 (1989). "This court's review of conclusions of law is unlimited." *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

K.S.A. 1990 Supp. 8-135(c)(1) provides that the application for certificate of title shall be made by the owner or the owner's agent and shall state all liens or encumbrances. It further provides that:

"The county treasurer shall use reasonable diligence in ascertaining whether the facts stated in such application are true, and if satisfied that the applicant is the lawful owner of such vehicle, or otherwise entitled to have the same registered in such applicant's name, shall so notify the division, who shall issue an appropriate certificate of title. The certificate of title shall be in a form approved by the division, and shall contain a statement of any liens or encumbrances which the application shows, and such other information as the division determines."

K.S.A. 1990 Supp. 8-135(c)(1) imposes a duty on the county treasurer to use "reasonable diligence" to verify the facts stated

in the application and to "so notify the division." Thus, the county treasurer had a duty to ascertain whether Woods "was the lawful owner of such vehicle." As a public employee the treasurer owed this duty, not just to Woods, but to others whom the procedures under the statute are designed to protect, including plaintiff lien-holders. Common law creates liability for those recorders of transfers of land who make negligent mistakes in recording or indexing. 66 Am. Jur. 2d, Records and Recording Laws § 195. While the general rule enunciated concerns transfers of land, it is equally applicable to transfers of personal property. The public depends on the accuracy of such documents for validity of ownership and transfers. See *VanNatta v. Crites*, 178 Ind. App. 113, 118-19, 381 N.E.2d 532 (1978).

The county treasurer had a duty to ascertain the facts and verify the accuracy of the application for title. Clearly Woods acted fraudulently in transferring the title to McFadden without noting the lien on the application and ultimately on the new certificate of title. However, absent immunity, there remains a question of fact whether the clerk in the county treasurer's office, who failed to record the lien on the application despite its presence on the assignment, was negligent.

The question remains whether the KDR breached a duty. K.S.A. 1990 Supp. 8-135(c)(1) imposes a duty on the KDR to issue an "appropriate certificate of title." An appropriate certificate must list all liens and encumbrances. K.S.A. 1990 Supp. 8-135(c)(1). This was not done. Whether the KDR failed to use due care and was responsible for this breach is a question of fact.

The county and the KDR each had a duty to Mid American. Whether these duties were breached causing damage to Mid American remain as questions of fact not proper for summary judgment. K.S.A. 1990 Supp. 60-256(c).

The trial court found that the county and the KDR are not protected by governmental immunity. We agree. Under the Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.*, a governmental entity is liable for negligent acts committed by any of its employees while acting within the scope of their employment if a private person would be liable under the laws of the state. K.S.A. 75-6103. Exceptions to this liability are provided in K.S.A. 75-6104. Under the act, liability is the rule and immunity the exception.

*Jackson v. City of Kansas City,* 235 Kan. 278, 286, 680 P.2d 877 (1984). The burden is on the governmental entity to show that it is immune from liability under one of the exceptions and any doubt should be construed against the exception. 235 Kan. at 286.

Both the KDR and the county argue that the "inspection" exception contained in K.S.A. 75-6104(k) applies. This section states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(k) the failure to make an inspection, or making an inadequate or negligent inspection, of any property other than the property of the governmental entity, to determine whether the property complies with or violates any law or regulation or contains a hazard to public health or safety."

Both parties rely on *Siple v. City of Topeka,* 235 Kan. 167, 172, 679 P.2d 190 (1984), where the Kansas Supreme Court adopted the definition for "inspection" in Black's Law Dictionary, which includes examining the authenticity or conditions of a document. Black's Law Dictionary 716 (5th ed. 1979). However, *Siple* did not concern an inspection of a document but the inspection of a tree for the purpose of determining if it was safe. The Kansas Supreme Court found the "inspection" exception applied and the city was immune from liability. 235 Kan. at 174.

More relevant to the matter before us are two cases which dealt with the inspection of documents. *Collins v. Heavener Properties, Inc.,* 245 Kan. 623, 783 P.2d 883 (1989); *Griffin v. State,* 14 Kan. App. 2d 803, 799 P.2d 521 (1990) .

In *Collins,* the Kansas Supreme Court held the inspection exception did not apply where the Board of County Commissioners erroneously issued a permit to build a septic tank on the plaintiffs' land. 245 Kan. at 631. Subsequently, plaintiffs received a permit to build a home. After the house was built, problems began with the plumbing. Plaintiffs then discovered the health department had determined the land was not suitable for a septic tank and should remain undeveloped. However, this information was inexplicably altered on the county records. Plaintiffs sued the county and the developer who had sold them the land and who had obtained the permit for the septic system. The trial court

dismissed the county, finding it was immune from liability by virtue of the inspection exception. While the Supreme Court did affirm on the basis that another exception applied, it found the inspection exception inapplicable because the county did not perform the inspection of the soil. Its sole function was to apply the results of the tests to its standards for a septic tank permit. This was done negligently because the county either disregarded a previous test showing the soil was not acceptable or relied on the alteration of that information.

In *Griffin*, the plaintiff, Kenneth D. Griffin, sued the State after being erroneously arrested for driving with a suspended license. Another Kenneth D. Griffin had been notified that his license would be suspended if he did not provide proof of insurance. The notice erroneously listed the plaintiff's driver's license number. When the plaintiff was later stopped for speeding, a routine license check indicated his license had been suspended, and he was arrested. He later filed suit. The trial court held the inspection exception did not provide the State with immunity, and this court agreed. In *Griffin* we held the inspection was not conducted to determine if the document in question, a notice of conviction, complied with the law, but the record was examined to determine if Griffin was subject to administrative action. Thus, this inspection was not within the meaning of K.S.A. 75-6104(k). 14 Kan. App. 2d 807-08.

In both *Collins* and *Griffin*, the county official looked at documents already prepared and determined if further action was permitted or required.

In the present case, the county treasurer had a duty to examine the application to determine if the facts stated in it were true. K.S.A. 1990 Supp. 8-135(c)(1). In making this decision, the county treasurer had before him the assignment on the back of the title which listed the lien of Mid American. Convinced the application meets the standard for a certificate of title, the county treasurer notified the KDR. This action is similar to that in *Collins* and *Griffin* and, as such, is not included in the inspection exception. The KDR likewise is not covered by the exception since it receives the documents and issues an appropriate certificate of title.

We turn now to the question of whether Mid American suffered damages.

The trial court found:

"3. That Christopher Woods, the applicant in this case, is considered a thief and is therefore unable to transfer good title to any subsequent transferees. Plaintiff still maintains its security interest in the 1980 Corvette and has not sustained any damages, nor has it adequately pursued its remedies prior to bringing this action."

All parties agree the trial court erred when it found Woods was a thief. Accordingly, the interest of subsequent transferees was not defeated by a theft.

The crucial question in determining whether Mid American was damaged is whether its lien was impaired by the neglect of the county treasurer and of the KDR to see that it was noted on Woods' certificate of title. If its lien was impaired, and certainly if it was not perfected, Mid American was damaged.

K.S.A. 1990 Supp. 84-9-302(3) provides:

"A security interest in:

. . . .

"(c) a vehicle . . . subject to a statute of this state which requires indication on a certificate of title or a duplicate thereof of such security interests in such vehicle:

"Can be perfected only by presentation, for the purpose of such registration or such filing or such indication, of the documents appropriate under any such statute to the public official appropriate under any such statute and tender of the required fee to or acceptance of the documents by such public official, or by the mailing or delivery by a dealer or secured party to the appropriate state agency of a notice of security interest as prescribed by K.S.A. 8-135, and amendments thereto. Such presentation and tender or acceptance, or mailing or delivery, shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article."

In *Beneficial Finance Co. v. Schroeder*, 12 Kan. App. 2d 150, 151, 737 P.2d 52, *rev. denied* 241 Kan. 838 (1987), this court stated:

"Pursuant to K.S.A. 1986 Supp. 84-9-302(3), a security interest in a vehicle may be perfected by noting its existence on the vehicle's certificate of title, or by mailing or delivering notice of the security interest to the Division of Motor Vehicles. K.S.A. 1986 Supp. 8-135(c)(5). Mailing or delivering notice of the security interest perfects the secured party's interest during the period from attachment to notation on the certificate of title."

The Kansas comments to 84-9-302 also state the lien must be noted on the certificate of title.

"Subsections (3)(b) and (3)(c) make it clear that security interests in motor vehicles can be perfected only by indication of the security interest on the certificate of title. These matters are governed by K.S.A. 8-135, which must be read in close relationship to this subsection."

The federal courts have interpreted this statute differently, finding that listing the lien on the title is not necessary to perfect the interest. *In re Littlejohn*, 519 F.2d 356 (10th Cir. 1975). There, the Tenth Circuit Court of Appeals relied on the language in K.S.A. 84-9-302 which requires the documents only be "tendered" to perfect the interest. Thus, the fact that the buyer in *Littlejohn* never applied for a certificate of title, and so none was issued listing the lien, did not mean the secured party had not perfected his interest. The creditor had noted its lien on the bill of sale and was thus protected against the claim of the bankruptcy trustee. The court emphasized that no unsecured creditors or purchasers were prejudiced. See *Matter of Kern*, 443 F. Supp. 219, 221 (D. Kan. 1977).

After *Littlejohn*, the legislature amended K.S.A. 8-135(c)(5) and K.S.A. 84-9-302(c) to allow a creditor to file a notice of security interest with the KDR to cover the period between the sale and the purchaser's obtaining a certificate of title. L. 1975, ch. 32, §§ 1, 2.

We believe the interpretation of the relevant statutes by the court in *Beneficial Finance Co.*, 12 Kan. App. 2d 150, and the Kansas comments are correct. The lien must be noted on the certificate of title to be perfected. Allowing perfection without such a notation would endanger the reliability of sales of vehicles by assignment of title. Here Mid American's security interest was not perfected because it was not listed on the certificate of title. Mid American should not be defeated because it did not send a notice of the security interest to the KDR the second time it assigned title to Woods. While notifying the KDR of a security interest is a method of perfecting a lien on a vehicle, it is only meant to perfect the lien until the certificate of title is issued. *Beneficial Finance*, 12 Kan. App. 2d at 151. Allowing it to be a method of perfection beyond this period would again diminish the reliability of a certificate of title. Of course, had Mid American filed a notice of security interest with KDR, that agency might have caught the county's mistake. This is a fact for consideration

in determining the extent of each party's negligence in causing the plaintiff's damages.

As the holder of an unperfected security interest, Mid American cannot now recover from bona fide purchasers. K.S.A. 1990 Supp. 84-9-301(1)(c). Since Mid American cannot recover the vehicle from subsequent purchasers, Mid American has been damaged.

Next we turn to whether the KDR was a proper party to this suit. Mid American sued the State of Kansas by and through the Kansas Department of Revenue. The docket sheet shows that the State of Kansas was served on March 13, 1989.

The State can be sued. K.S.A. 75-6102(c); K.S.A. 75-6103. "State" is defined for this purpose as "the state of Kansas and any department or branch of state government." K.S.A. 75-6102(a). This definition has been interpreted to mean that, unless a statute specifically provides otherwise, a subordinate government agency does not have the capacity to be sued. *Hopkins v. State*, 237 Kan. 601, 606, 702 P.2d 311 (1985). Here, the State of Kansas was sued and served with process. While the KDR may not be able to be sued alone, it may be sued in conjunction with the State.

Finally, the KDR appeals the language used in the court's journal entry. It argues that the court erred when it left out the word "sole" in the first sentence of paragraph 20 of the journal entry, which should have read, "The [sole] efforts made by the plaintiff to enforce its alleged security interest consist of: . . . ." The KDR alleges there were telephone conversations regarding this version and the trial court rejected the language. However, there is no evidence of this in the record.

" 'The burden is upon the appellant to designate a record sufficient to present its points to the appellate court and to establish the claimed error.' " *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 399, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988). In any event, we do not see how this change harmed the KDR.

We reverse the trial court's decision granting the defendants' motions for summary judgment and remand for further proceedings.