No. 72,457

CITY OF OVERLAND PARK, *Appellee*, v. BRYAN NIEWALD and
TODD JUNG, *Appellants*.
(907 P.2d 885)

Opinion filed December 8, 1995.

*Todd Jung* and *Bryan Niewald*, appellants, were on the brief pro se.

*J. Bart Budetti*, senior assistant city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: In the district court, the City of Overland Park (City) filed a petition for enforcement of its fire inspection ordinance against Bryan Niewald and Todd Jung, owners of Central Video Services, a business located in Overland Park. The petition alleged that Niewald and Jung refused to allow city fire inspectors access to their business premises for the purpose of conducting a routine periodic fire-prevention inspection. On cross-motions for summary judgment, the district court ruled in favor of the City and ordered issuance of a warrant to enforce the fire inspection ordinance. The Court of Appeals affirmed. *City of Overland Park v.*

*Niewald*, 20 Kan. App. 2d 909, 893 P.2d 848 (1995). This court granted Niewald and Jung's petition for review.

The following facts were stipulated to by the parties:

1. The City is a municipal corporation operating under the laws of the State of Kansas.

2. Bryan Niewald and Todd Jung are owners of Central Video Services, which has its principal place of business at 8991 West 75th Street, Overland Park, Kansas. That place of business has not been inspected by the City's fire department.

3. The City's fire department attempted to inspect that place of business.

4. Niewald and Jung have refused to allow City fire inspectors access to their place of business.

5. Regular periodic fire inspections are done of commercial businesses in Overland Park pursuant to the City's fire prevention code and an administrative plan of the Overland Park Fire Department to inspect all business premises within the city once each calendar year. It provides for inspections at reasonable hours for the purpose of ascertaining and causing to be corrected any conditions liable to cause fire, contribute to the spread of fire, interfere with firefighting operations, or cause any other fire safety violation.

6. The City's fire prevention code applies equally to new and existing buildings and conditions, except those which do not constitute a distinct hazard to life or property.

7. The City does not have probable cause to suspect that any conditions liable to cause fire, contribute to the spread of fire, interfere with firefighting operations, or cause any other fire safety violation exist on the business premises of Niewald and Jung.

8. There is no written agreement, contract, other binding instrument, or show of harm between the City and Niewald and Jung by which to establish an equity relationship.

9. The City's fire prevention ordinance incorporates by reference a savings clause.

Upon consideration of cross-motions for summary judgment, the district court stated the issues before it as follows:

1. Whether the district court has jurisdiction over the action.

2. Whether K.S.A. 1994 Supp. 22-2502 limits the district court's power to issue a warrant for a search which lacks probable cause that some crime has been or is being committed.

3. Whether a search that lacks probable cause is constitutional under the federal and state Constitutions.

4. Whether City Ordinance BC-FP-1671, subsection F-107.1-3, is constitutional and enforceable against Niewald and Jung.

The district court concluded that it had jurisdiction, that it could issue a search warrant without probable cause (because K.S.A. 1994 Supp. 22-2502, which governs the issuance of search warrants in criminal cases, did not apply), that a search without probable cause was constitutional, and that the City ordinance is constitutional and enforceable against Niewald and Jung.

The Court of Appeals agreed that the district court had jurisdiction of the action. 20 Kan. App. 2d at 911. The Court of Appeals disagreed with the rationale of the district court but upheld the judgment of the district court on different grounds. 20 Kan. App. 2d at 915. Where the district court concluded that K.S.A. 1994 Supp. 22-2502 did not apply, the Court of Appeals concluded that

"prior to issuing an administrative search warrant, a magistrate or district judge is required to find the pertinent regulation meets the requirements established in *Camara* [*v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967)], thus providing probable cause to issue the warrant." 20 Kan. App. 2d at 915.

Thus, both courts found that the administrative search warrant was constitutional. 20 Kan. App. 2d at 915.

Niewald and Jung raise two issues:

1. Did the district court properly exercise jurisdiction over the City's petition for enforcement of its fire inspection ordinance?

2. Is the warrant issued by the district court for the administrative search of Niewald and Jung's business premises valid?

The Court of Appeals concluded that the issuance of an administrative search warrant is within the general jurisdiction of the district court. It noted that the municipal court is precluded by K.S.A. 12-4104 from issuing the warrant. K.S.A. 12-4104 provides that a municipal court has jurisdiction over cases involving violations of city ordinances, but that "[s]earch warrants shall not issue

out of a municipal court." K.S.A. 20-301 provides that district courts "shall have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." Because Niewald and Jung cited no authority that removed jurisdiction from the district court, the Court of Appeals concluded that the issuance of the administrative search warrant was within the district court's jurisdiction. 20 Kan. App. 2d at 910-11. We agree.

We note that in their petition for review, Niewald and Jung clarify their contention that the district court was without jurisdiction to issue the administrative search warrant. Their position is that *no* Kansas court has authority to issue an administrative search warrant. Their rationale is that K.S.A. 1994 Supp. 22-2502 is a proviso to the general grant of jurisdiction in K.S.A. 20-301. They contend that the 22-2502 provision for the issuance of search warrants in criminal proceedings forecloses issuance of a search warrant in a civil proceeding. Thus, in reality, their argument is not one of a lack of jurisdiction to issue an administrative (*i.e.*, civil) search warrant but, rather, a lack of authority.

In holding that the district court had authority to issue the warrant, the Court of Appeals relied on the provisions of K.S.A. 1994 Supp. 22-2502, stating in part:

"Here, the district court ruled that K.S.A. 1994 Supp. 22-2502 was inapplicable and did not limit the court's jurisdiction to issue an administrative search warrant. We are convinced, however, based on the analysis found in *Camara* and *See* [*v. City of Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967)], that the existence of an administrative policy or ordinance which specifies the purpose, frequency, scope, and manner of the inspection provides a constitutional substitute for probable cause that a violation has occurred. No statute exists in the Code of Civil Procedure which authorizes administrative search warrants. We conclude that, under the provisions of K.S.A. 1994 Supp. 22-2502, prior to issuing an administrative search warrant, a magistrate or district judge is required to find the pertinent regulation meets the requirements established in *Camara*, thus providing probable cause to issue the warrant." 20 Kan. App. 2d at 914-15.

Niewald and Jung argued in their petition for review that the Court of Appeals overlooked the 22-2502 specification of probable cause *of what*. K.S.A. 1994 Supp. 22-2502(a) provides in part: "A search warrant shall be issued only upon the . . . statement . . . of any person under oath or affirmation which states facts sufficient to

show probable cause *that a crime has been or is being committed.*" (Emphasis added.) They have a point. K.S.A. 1994 Supp. 22-2502(a) requires a showing of probable cause to believe that a crime has been or is being committed. It does not authorize issuance of a warrant upon a showing of a policy designed to detect and correct code violations before harm may result from them.

Niewald and Jung also direct this court's attention to the plain and unambiguous statutory language which authorizes issuance of a search warrant *only* upon a showing of probable cause to believe that a crime has been or is being committed. It is their position that this language disallows administrative search warrants. In other words, they contend that the legislature worded K.S.A. 1994 Supp. 22-2502(a) so as to occupy the entire field. Its existence, therefore, forecloses issuance of a search warrant in any circumstance other than one in which there is probable cause to believe that a crime has been or is being committed. We agree 22-2502(a) does not apply, but it does not follow that the district court is foreclosed from issuing an administrative search warrant.

The Court of Appeals was not willing to stray far from 22-2502 and indicated a finding consistent with the holding in *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), and *See v. City of Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967), would meet the probable cause requirement of 22-2502. With regard to *Camara*, the Court of Appeals stated:

"The *Camara* Court held that administrative searches of dwellings were significant intrusions upon the interests protected by the Fourth Amendment and that such searches conducted without warrant procedures lacked the traditional safeguards guaranteed by the Fourth Amendment. 387 U.S. at 534. However, such a finding was only the beginning of the analysis. Because the governmental interest in administrative searches is simply to prevent conditions which constitute hazards to public health and safety, the intrusiveness of such searches must be weighed in terms of the reasonable goal of enforcement of safety codes. 387 U.S. at 534-35. The Court went on to hold:

" '[P]robable cause" to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based on the passage of time, the nature of the building . . . , or the condition of the entire area; but they will not necessarily

depend upon specific knowledge of the condition of the particular dwelling.' 387 U.S. at 538.

"The *Camara* Court further noted that such programs have a long history of judicial and public acceptance and that no other technique would be practical to insure that all dangerous conditions are prevented. 'Many such conditions—faulty wiring is an obvious example—are not observable from outside the building and indeed may not be apparent to the inexpert occupant himself.' 387 U.S. at 537." 20 Kan. App. 2d at 911-12.

Of *See,* the Court of Appeals observed that it was similar to *Camara,* but "more on point." 20 Kan. App. 2d at 912. In *See,* the Supreme Court concluded that an inspector's entry into nonpublic parts of commercial premises could be compelled through a warrant procedure. 387 U.S. at 545. Our Court of Appeals added:

"In a later case, the Court noted that inspections of commercial property may be unreasonable if the inspections are so random, infrequent, or unpredictable that the owner has no real expectation that his or her property will periodically be inspected. *Donovan v. Dewey,* 452 U.S. 594, 599, 69 L. Ed. 2d 262, 101 S. Ct. 2534 (1981)." 20 Kan. App. 2d at 913.

The City's response to Niewald and Jung's argument is that the existence of codifications of certain constitutional rights does not compel the conclusion that they govern all circumstances implicating the constitutional provisions. The City cites *Davis v. Kansas Dept. of Revenue,* 252 Kan. 224, 843 P.2d 260 (1992), and *State v. Garcia & Bell,* 210 Kan. 806, 504 P.2d 172 (1972), as authority for its position.

The *Davis* opinion begins: "This driver's license suspension case concerns a sobriety checkpoint vehicle stop. The first impression single issue is whether a Kansas statute authorizing such a stop is a prerequisite to the stop's validity." 252 Kan. 224. The constitutionality of sobriety checkpoints under the Fourth Amendment already had been resolved in *Michigan State Police Dept. v. Sitz,* 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990). In *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983), this court determined that sobriety checkpoints could pass muster under the Kansas Constitution Bill of Rights § 15, which provides the same protection as the Fourth Amendment to the federal Constitution. See *State v. Wood,* 190 Kan. 778, 788, 378 P.2d 536 (1963). In *Davis,*

the court concluded that "[s]obriety checkpoints are an exercise of generally authorized police powers," 252 Kan. at 230, so that "[s]pecific legislative authorization is not a prerequisite to the validity of sobriety checkpoint stops," 252 Kan. at 225.

The specific legislative authority at issue in *Davis* was K.S.A. 1991 Supp. 22-2402(1), which codified the stop and frisk rule of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). 252 Kan. at 228. This court's rationale for concluding that the statute neither applied nor controlled is pertinent to the present case:

> "The fact that evidence may be suppressed when the statute is applicable and is violated does not compel a determination that the statute applies in all stop situations. In the case at bar, the statute is not applicable. 'Stop and frisk' statutes were enacted to apply to situations where individual motorists are stopped based upon a particularized reasonable suspicion of criminal activity. Roadblock stops according to a plan embodying explicit, neutral limitations on the conduct of individual officers are in a separate category. . . . .
>
> "The stop and frisk statute provides objective guidance for the determination of the constitutionality of police conduct within the context of the investigatory stop and frisk. The history of the statute neither supports a claim that it governs all types of police contact with citizens nor a claim that it functions as a general exclusionary rule. We reason that all specifics of police enforcement methods need not be legislated.
> . . . .
> "KDR argues that *State v. Garcia & Bell*, 210 Kan. 806, 504 P.2d 172 (1972), a parking meter theft case, controls the case at bar. The police in *Garcia & Bell*, after observing suspicious activity around some parking meters, stopped the suspects and ultimately searched a car which was at the scene. Garcia and Bell claimed that the evidence obtained was the result of an illegal search and seizure. We reasoned: '[O]ur own statute [K.S.A. 1971 Supp. 22-2501] was intended only to furnish guidelines to officers and courts as to one method of making a valid, warrantless search. We hold that it does not prohibit other warrantless searches which comport with the constitutional requirement of reasonableness.' 210 Kan. at 811.
>
> "*Garcia & Bell* teaches that legislation in one area concerning warrantless searches does not act to forbid all other types of search activity. Interpretation of K.S.A. 1991 Supp. 22-2402(1), as a general exclusionary rule, goes beyond the plain meaning of the statute and is contrary to the interpretive approach expressed in *Garcia & Bell*." 252 Kan. at 228-29.

In *Garcia & Bell*, the defendants sought to avoid the force of Kansas case law "by arguing that the legislature has now addressed

itself to the subject of warrantless searches, and by enacting K.S.A. 1971 Supp. 22-2501 has occupied the field." 210 Kan. at 810. This court stated: "We believe our own statute was intended only to furnish guidelines to officers and courts as to one method of making a valid, warrantless search. We hold that it does not prohibit other warrantless searches which comport with the constitutional requirement of reasonableness." 210 Kan. at 811.

The City contends that the reasoning of the court in *Davis* and *Garcia & Bell* controls in the present case as well. We agree. It therefore follows that the presence of K.S.A. 1994 Supp. 22-2502(a) in the code of criminal procedure does not prevent administrative agencies from making other types of constitutionally permissible searches. The constitutionality of administrative searches within the framework of a warrant procedure has been resolved in *Camara* and *See*. Thus, we are led to conclude that the statute was intended to govern one type of warrant procedure: search warrants to be used in criminal investigations. It does not prohibit issuance of other warrants which comport with the constitutional requirement of reasonableness. As the Missouri Supreme Court stated in a similar challenge to administrative search warrants, it would be unreasonable to think that in enacting the criminal search warrant statute, the legislature intended to forever preclude the issuance of search warrants for purposes other than investigation or prosecution of criminal offenses. *Frech v. City of Columbia*, 693 S.W.2d 813, 815 (Mo. 1985).

In *Siple v. City of Topeka*, 235 Kan. 167, 679 P.2d 190 (1984), this court addressed the issue of inspections by governmental entities for the benefit of the public in preventing and abating health and safety hazards. The case was an action in tort for damage caused to Siple's car when a limb fell on it. Siple alleged that the City of Topeka owed a duty to inspect and remove defective trees. 235 Kan. at 168. The issue was whether the city was immune under the Kansas Tort Claims Act for its employee's negligent inspection of the tree, and the court concluded that it was immune. 235 Kan. at 174. The syllabus of the court's opinion includes the following:

"Inspection laws are regulations designed to safeguard the public against fraud, injury and to promote the public health, safety and welfare. They provide for the

examination or inspection of property by an authorized public official. The public official is to examine and determine whether the standards prescribed by the regulations are complied with." Syl. ¶ 2.

"Subject to the paramount authority of the legislature, the enactment and enforcement of inspection laws are within the police power of the state. The power to enact inspection laws may be conferred upon municipal corporations by the state." Syl. ¶ 3.

"Inspection as used in [the Kansas Tort Claims Act] means investigation, or examination for the purpose of determining whether any property other than property of a governmental entity complies with or violates any law or regulation of the governmental entity or constitutes a hazard to public health or safety." Syl. ¶ 4.

"Statutes, ordinances and codes requiring inspections are enacted by governmental entities to secure for the public at large the benefits of such enactments. The legislature determined inspection activities are to be encouraged rather than discouraged by the imposition of civil tort liability." Syl. ¶ 5.

In keeping with the rationale of *Siple*, inspections for the purpose of eliminating hazards to public health and safety are to be encouraged by the availability of a warrant procedure which would permit entry in the rare case where it is otherwise refused, upon a showing of probable cause as described in *Camara* and *See*.

We agree that the district court has jurisdiction and authority to issue an administrative search warrant. However, we disagree with the Court of Appeals that K.S.A. 1994 Supp. 22-2502 is applicable to the issuance of an administrative search warrant. We specifically disapprove of the language "Under the provisions of K.S.A. 1994 Supp. 22-2502," in Syl. ¶ 6 of the Court of Appeals opinion and the corresponding language in the body of the opinion.

The decision of the Court of Appeals is affirmed as modified. The judgment of the district court is affirmed.

LARSON, J., not participating.

ROBERT H. MILLER, C.J. Retired, assigned.