EUGENE OWENS, Appellant, *v.* THE CITY OF NORTH LAS VEGAS, NEVADA, Respondent.

No. 5635

February 18, 1969                    450 P.2d 784

*Edward G. Marshall,* of Las Vegas, for Appellant.

*Jeffrey Ian Shaner,* of North Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

The municipal court of the City of North Las Vegas found Eugene Owens guilty of two misdemeanors: (1) Assault and battery and (2) obstructing a police officer in an attempt to serve a search warrant. Owens appealed his convictions to the Eighth Judicial District Court, and he demanded a jury trial. The jury found Owens guilty of the first offense, but acquitted him of the second one. He was fined $100. Owens then filed in the district court a petition for a writ of habeas corpus, challenging the legality of his conviction. The district judge denied the petition. Owens now appeals to this court from the order denying his application for habeas.

Both charges grew out of Owens' refusal to permit the city building inspector to enter his home to check for violations of the city building code. Chronologically the facts are these: In October 1966 the City advised Owens by registered letter that an inspector from the City would soon visit his home to check for structural deficiencies in violation of the city building code. The inspection was in connection with an urban renewal program. The inspector arrived on October 25, but the appellant's wife refused him permission to inspect the premises. Another visitation was attempted on June 20, 1967, but to no avail. On June 30, the inspector noted violations of the building code on the exterior of the residence and reported them to the city attorney. The city attorney advised the inspector to secure a search warrant to inspect Owens' residence. The inspector appeared before the justice of the peace, made his affidavit specifying the violations of the code which he had observed about the exterior of Owens' premises, described

his unsuccessful attempts to inspect the interior of the residence, and set forth the reasons for his belief that an inspection of the interior of the premises would reveal similar deficiencies. The justice of the peace issued the search warrant.

On the day the warrant was issued, but before it was served, Owens called upon the chief of police and put him on notice that he would not honor the warrant and that he would resist any attempts to effectuate its service. This he did on June 26, but the warrant was served and the interior of the residence inspected, where 27 violations of the city building code were noted.

1. The thrust of appellant's principal argument is that the search warrant was invalid and that, therefore, Owens had every right to resist the officer when service of the warrant was made. The alleged invalidity is based on appellant's contention that the four grounds for the issuance of search warrants, as provided in NRS 179.020[1], in effect at the time of the search, are exclusionary of any other grounds and that, since the inspector's affidavit included grounds other than the four set forth in NRS 179.020, the search warrant was invalid. In other words, because the search warrant was not specifically authorized by our state statutes, the search was invalid. Appellant's contention is wholly without merit, because it misses the point. The question is not whether the search was authorized by our state law. The question is, rather, whether the search was reasonable under the Fourth Amendment to the United States Constitution. Just as a search authorized by state law may be an unreasonable one under the Fourth Amendment, so may a search not expressly authorized by state law

[1]NRS 179.020. "Grounds for issuing search warrant. A search warrant may be issued upon any of the following grounds:

"1. When the property was stolen or embezzled.

"2. When the property or things were used as the means of committing a felony.

"3. When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he may have delivered them for the purpose of concealing them or preventing their being discovered.

"4. When the property or things to be seized consist of any item or constitute any evidence which tends to show that a felony has been committed, or tends to show that a particular person has committed a felony.

"The property or things described in this section may be taken on the warrant from any place, or from any person in whose possession it may be."

be justified as a constitutionally reasonable one. Cooper v. California, 386 U.S. 58 (1967); Sibron v. New York, 88 S.Ct. 1889 (1968).

2. We turn now to consider that precise question—namely: Was the search of Owens' home a constitutionally reasonable one? The Supreme Court of the United States, in Camara v. Municipal Court, 387 U.S. 523 (1967), answers that question. Prior to Camara, the High Court had repeatedly held that a warrantless search of a residence by a municipal fire, health, and housing inspector was constitutionally permissible, because such inspection programs "touch at most upon the periphery of the important interests safeguarded by the Fourteenth Amendment's protection against official intrusion." Frank v. Maryland, 359 U.S. 360 (1959). In Frank, the Court ruled that such inspections were merely to determine whether peripheral conditions existed which did not comply with the minimum standards prescribed in local regulatory ordinances. The majority ruled that, since the inspector did not ask that the property owner open his doors to a search for "evidence of criminal action" which could be used to secure the owner's criminal conviction, the historic interests of "self-protection", jointly protected by the Fourth and Fifth Amendments, were not involved, but only the less intense "right to be secure from intrusion into personal privacy." Id. at 365. See also Ohio ex rel. Eaton v. Price, 364 U.S. 263 (1960). But in overruling Frank and the other cases permitting warrantless searches of homes by municipal fire, health, and building inspectors, Mr. Justice White, who wrote for the majority in Camara, supra, stated at 530:

"We may agree that a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime . . . But we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely 'peripheral.' It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior. For instance, even the most law-abiding citizen has a very tangible interest in limiting the cricumstances under which the sanctity of his home may be broken by official authority, for the possibility of criminal entry under the guise of official sanction is a serious threat to personal and family security."

It is now the law of the land that administrative searches and inspections, such as in this case, are significant intrusions upon the interests protected by the Fourth Amendment and that such inspections and searches, when authorized and conducted without a warrant procedure, lack the traditional safeguards which the Fourth Amendment guarantees to every individual.

3. Appellant next argues that, since the Fourth Amendment provides that no warrants shall issue but upon probable cause, the search in his case was constitutionally impermissible, because the inspector, when he executed his affidavit, lacked probable cause to believe that Owens' dwelling contained violations of the minimum standards prescribed by the code being enforced. We do not agree. Exterior violations of the the building code were observed by the person who made the affidavit for a search warrant. This alone establishes probable cause to search pursuant to a warrant. In Camara, the High Court acknowledged that some accommodation between public need and individual rights is essential and held that in determining whether a particular inspection is reasonable—and thus in determining whether there is probable cause to issue a warrant for that inspection—the need for the inspection must be weighed in terms of the reasonable goals of code enforcement. Mr. Justice White, in weighing the standard for "probable cause" in the case of criminal investigations against the standard required in administrative inspection programs, said at 534:

"In cases in which the Fourth Amendment requires that a warrant to search be obtained, 'probable cause' is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness. To apply this standard, it is obviously necessary first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen. For example, in a criminal investigation, the police may undertake to recover specific stolen or contraband goods. But that public interest would hardly justify a sweeping search of an entire city conducted in the hope that these goods might be found. Consequently, a search for these goods, even with a

warrant, is 'reasonable' only when there is 'probable cause' to believe that they will be uncovered in a particular dwelling.

"Unlike the search pursuant to a criminal investigation, the inspection programs at issue here are aimed at securing city-wide compliance with minimum physical standards for private property. The primary governmental interest at stake is to prevent even the unintentional development of conditions which are hazardous to public health and safety. Because fires and epidemics may ravage large urban areas, because unsightly conditions adversely affect the economic values of neighboring structures, numerous courts have upheld the police power of municipalities to impose and enforce such minimum standards even upon existing structures.[11]"

Where considerations of health and safety are involved, the facts that would justify an inference of "probable cause" to make an inspection are different from those that would justify an inference when a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of. cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of a warrant. The test of "probable cause" required by the Fourth Amendment can take into account the nature of the search that is being sought. There can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails.

4. Finally, since our opinion emphasizes the controlling standard of reasonableness, we wish to make it clear that nothing in this opinion is intended to foreclose prompt inspections, even without a warrant, which the law has always permitted in emergency situations. See North Am. Cold Storage Co. v. City of Chicago, 211 U.S. 306 (1908) (seizure of unwholesome food); Jacobson v. Massachusetts, 197 U.S. 11 (1905) (compulsory smallpox vaccination); Compagnie Francaise de Navigation a Vapeur v. Louisiana State Bd. of Health, 186 U.S. 380 (1902) (health quarantine); Kroplin v. Truax, 165 N.E.

---

[11]See *Abbate Bros.* v. *City of Chicago,* 11 Ill.2d 337, 142 N.E.2d 691; *City of Louisville* v. *Thompson,* 339 S.W.2d 869 (Ky.); *Adamec* v. *Post,* 273 N.Y. 250, 7 N.E.2d 120; *Paquette* v. *City of Fall River,* 338 Mass. 368, 155 N.E.2d 775; *Richards* v. *City of Columbia,* 227 S.C. 538, 88 S.E.2d 683; *Boden* v. *City of Milwaukee,* 8 Wis.2d 318, 99 N.W.2d 156."

498 (Ohio 1929) (summary destruction of tubercular cattle). We appreciate that in most routine inspections there is no great urgency to inspect at a certain time on a given day. Likewise, most citizens will permit routine inspections without a warrant. As a practical matter, in view of the Fourth Amendment's requirement that a warrant describe the property to be searched, warrants should normally be sought only after the entry has been refused, absent some compelling reason for securing immediate entry.

In conclusion, we hold that the search of Owens' home met the standard of reasonableness as we have defined it in this opinion and that therefore his jury conviction was lawful.

The order denying Owens' application for habeas is affirmed.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.