**Commissioner of Labor, Allen J. MEIER, Plaintiff,**

v.

**Honorable Paul J. SULHOFF, Judge, Fourth Judicial District of Iowa, Defendant.**

No. 83–1247.

Supreme Court of Iowa.

Jan. 16, 1985.

Thomas J. Miller, Atty. Gen., and Thomas D. McGrane, Asst. Atty. Gen., for plaintiff.

No brief filed for defendant.

CARTER, Justice.

Plaintiff Allen J. Meier, the Iowa Commissioner of Labor (hereinafter the commissioner), has petitioned for and been granted a writ of certiorari to challenge the legality of an order entered by the defendant judge denying an application for an administrative inspection warrant. He contends that as the statutory enforcer of the Iowa Occupational Safety and Health Act, Iowa Code chapter 88, (hereinafter IOSHA), he is empowered to seek administrative inspection warrants and that his application to the defendant judge established the requisite cause to obtain the issuance of an administrative inspection warrant in the present proceeding.

The commissioner's application sought an administrative inspection warrant allowing agents of the Department of Labor to make a general safety and health inspection at the premises of Schuler Manufacturing and Equipment Company in rural Cass County. The application states with particularity the method by which Schuler has been identified as an inspection site pursuant to a general administrative plan established by the commissioner for purposes of carrying out his responsibilities under IOSHA.[1] The application further recites that Schuler had been cited for six "non-serious" IOSHA violations on a prior occasion and that the commissioner's duly qualified agent had been denied entry to the Schuler plant by managerial personnel after presenting necessary credentials and requesting admission.

## I. Basis of Review.

■ The propriety of certiorari to review the district court's refusal to act in the present case is a preliminary matter which must be considered. Certiorari lies when a court is alleged to have exceeded its jurisdiction or to have acted illegally. E.g., State v. West, 320 N.W.2d 570, 573 (Iowa 1982); Hadjis v. District Court, 275 N.W.2d 763, 765 (Iowa 1979); see generally 1 A. Vestal & P. Willson, Iowa Practice § 13.45 (1983 rev. ed.). This form of review has been utilized to challenge the legality of a dispositional order affecting the extent to which a public agency may act within the agency's statutory authority. See State v. Ryan, 351 N.W.2d 186, 187–88 (Iowa 1984). Within this context, as in Ryan, certiorari appears to be an appropriate remedy under which to review the le-

gality of the contested ruling in the present proceeding.

## II. Entitlement to a Warrant in Aid of IOSHA Inspection Authority.

The defendant judge, in denying the application for an inspection warrant, indicated that the showing made was insufficient to satisfy the warrant requirements of the fourth amendment to the federal constitution. Although not explicitly stating so in the order, the defendant judge strongly implied that in order for a search warrant to issue the application must establish probable cause that an IOSHA violation is occurring on the premises.

■ In challenging that implicit standard, the commissioner contends that probable cause, as that term has been applied in fourth amendment claims arising in criminal investigations, is not relevant to the present proceeding. We believe that the commissioner is correct in that assertion based upon our reading of two decisions of the Supreme Court. As indicated in Marshall v. Barlow's, Inc., 436 U.S. 307, 320–21, 98 S.Ct. 1816, 1824–25, 56 L.Ed.2d 305, 316 (1978), for purposes of an administrative investigation designed to secure compliance with federal OSHA laws,

probable cause in the criminal sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting ... inspection are satisfied with respect to a particular [establishment]."[2]

1. The commissioner's application generally sets forth the derivation of the department's inspection plan which is derived from a standard industrial classification developed by OSHA's national office. A particular company's rating on this scale is developed by considering such factors as the toxic nature of materials used and the number of potentially affected employees. Schuler's relative ranking on this list is stated as being 51 out of 194, placing it among the 60 highest industries with respect to health hazards.

2. Among the requirements which Barlow's, Inc. places on the determination of the reasonableness of an administrative inspection plan is that it be derived from neutral sources such as, for example, dispersion of employees in various types of industries. Barlow's, Inc., 436 U.S. at 321, 98 S.Ct. at 1825, 56 L.Ed.2d at 316. In applying this principle, the court in Matter of Establishment Inspection, 589 F.2d 1335, 1341 (7th Cir.1979) held that in evaluating statistics in the area of occupational injuries, an administrative enforcement agency is entitled to form a "reasoned opinion" as to what is a "high inci-

*Accord, Camara v. Municipal Court,* 387 U.S. 523, 538, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930, 940 (1967) (emphasis added).

If this were the only issue in the case, our task could end at this point by sustaining the writ and remanding the matter to the defendant judge with directions to reconsider the application under the correct constitutional standard. Our problem is made more difficult, however, by the fact that the commissioner requests us to also consider the more fundamental question of whether the district courts or other agencies of the judicial branch are empowered to issue search warrants for the purposes of IOSHA inspections.

Section 88.6 gives the commissioner the right to enter and inspect "any factory, plant, establishment, construction site, or other area, work place or environment where work is performed by an employee of an employer." Although the commissioner's regulations authorize compliance officers to apply to the courts for compulsory process for enforcement of the Department of Labor's statutory inspection authority, there is no statutory authority for the court to issue search warrants in aid of such inspections. The language of the statute suggests that the inspections made pursuant thereto are to be permitted upon mere presentation of "appropriate credentials" by the commissioner's representatives. This situation is perhaps explained by the fact that this legislation was enacted in 1966, almost a year before the Supreme Court in *Camara* held that warrantless entries for administrative inspections constitute a violation of the fourth amendment. The question thus posed is whether the courts, in the absence of legislative authorization, may issue administrative search warrants to the commissioner or his representatives in order that those persons may carry out their mandate in a constitutional, albeit legislatively unanticipated manner.

In seeking to establish the authority of the defendant judge to issue a warrant for carrying out an IOSHA inspection, the commissioner relies upon the decisions of federal courts, after *Barlow's, Inc.,* which have sustained federal OSHA inspections aided by warrants. These decisions include *Babcock and Wilcox Co. v. Marshall,* 610 F.2d 1128, 1134–35 (3d Cir.1979); *Matter of Establishment Inspection,* 589 F.2d 1335, 1341 (7th Cir.1979); *Pelton Casteel, Inc. v. Marshall,* 588 F.2d 1182, 1186 (7th Cir. 1978); *Marshall v. Huffhines Steel Co.,* 478 F.Supp. 986, 988 (N.D.Tex.1979); *Empire Steel Manufacturing Co. v. Marshall,* 437 F.Supp. 873, 881–82 (D.Mont.1977). We find these cases to be unpersuasive with respect to the issue now before us. The federal decisions either assume the existence of the warrant authority without identifying its source, or find the source to lie in Federal Rule of Criminal Procedure 41(h) authorizing warrants "in circumstances for which special provision is made."

We have no counterpart to federal rule 41(h) in our statutes. Our criminal warrant provisions are contained in Iowa Code sections 808.1–.8 and authorize the issuance of such warrants for the following:

1. For property which has been obtained in violation of law.

2. For property, the possession of which is unlawful.

3. For property used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered.

4. For any other property relevant and material as evidence in a criminal prosecution.

Iowa Code § 808.2. Search warrants issued for these purposes may be executed only by a peace officer.

In other statutes, the legislature has specifically authorized administrative bodies to seek administrative inspection warrants under certain circumstances. *See, e.g.,* Iowa

---

dence" of injuries or risk in a particular industry. Based upon such statistics, particular inspection sites may be chosen for purposes of

reducing high incidence of occupational injuries and illnesses known to exist in certain industries.

Code sections 100.51–.54 (fire inspections), section 204.502 (controlled substances), and section 467A.51 (soil conservation).

■ Because there is no common-law right to issue a search warrant, *see, e.g., State ex rel. Accident Prevention Division v. Foster,* 31 Or.App. 291, 570 P.2d 398, 401 (1977); *State v. Baker,* 251 S.C. 108, 160 S.E.2d 556 (1968); 68 Am.Jur.2d *Search and Seizure* § 61 (1973), we conclude that we lack the authority to expand by judicial fiat the purposes fixed by the legislature for which search warrants may lawfully issue. Nor do we consider it our province, whatever the purpose of a search warrant, to establish the procedural requirements for issuance, execution and return thereof. Because of the many choices involved, each involving important policy considerations, the court cannot begin to imply a legislative intent on matters which the legislature has not itself addressed.

■ The commissioner suggests that, if courts are empowered to prohibit unconstitutional entries, they must accept a concomitant responsibility to facilitate remedial public interest statutes by performing the judicial acts which the constitution requires to validate such statutes. While that argument may have validity within a different context, it does not, we believe, provide a basis for authorizing a search warrant to issue in those situations not provided for in the legislative enactments pertaining to search or inspection warrants. The situation with which we are presently faced must be distinguished from those cases in which the court has acted to uphold statutory taking procedures against a constitutional attack by supplying judicially mandated notice requirements. *E.g., Auxier v. Woodward State Hospital-School,* 266 N.W.2d 139, 142 (Iowa 1978); *Forst v. Sioux City,* 209 N.W.2d 5, 8 (Iowa 1973). Much more is being asked of us in the present case than to merely prescribe notice. While an administrative inspection aided by search warrant is not as great an intrusion in a constitutional sense as a warrantless entry upon show of credentials, it does encompass a right of forcible entry

upon refusal to honor the warrant. There is no suggestion in the applicable statutes that such right of forcible entry was intended to be given to the employees of the Department of Labor.

■ For the reasons herein stated, we hold that the defendant judge properly refused to issue an administrative search warrant upon the application of the commissioner, although not for the same reasons upon which our decision is based. As a result of that conclusion, the writ is annulled.

WRIT ANNULLED.

All Justices concur except McCORMICK, J., REYNOLDSON, C.J., and HARRIS and LARSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

As this court recognizes, the district court applied the wrong standard for determining whether probable cause existed for issuance of an administrative inspection warrant. The correct standard, as the court notes, is set out in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 321, 98 S.Ct. 1816, 1824–25, 56 L.Ed.2d 305, 316 (1978) ("A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights."). This court refuses, however, to recognize the authority of the district court to issue an administrative warrant to permit the commissioner of labor to carry out his statutory inspection duties. I believe the district court has implied authority to issue such warrants.

The General Assembly has declared in Code chapter 88 "the policy of this state to assure so far as possible every working man and woman in the state safe and healthful working conditions and to preserve human resources...." Iowa Code

§ 88.1 (1983). One of the prescribed means for achieving this objective is "[p]roviding an effective [occupational safety and health standards] enforcement program which shall include a prohibition against giving advance notice of any inspection and sanctions for an individual violating this prohibition." § 88.1(10). The commissioner is authorized to enter premises for the purpose of investigation and enforcement:

> In order to carry out the purposes of this chapter, the commissioner or his representative, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized:
>
> a. To enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer.
>
> b. To inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and within a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent or employee.

§ 88.6(1). Any person who gives advance notice of an inspection without authority to do so is guilty of a serious misdemeanor. § 88.14(6).

In the present situation the commissioner sought to inspect the premises of Shuler Manufacturing & Equipment Co., Inc. in Griswold, pursuant to a health inspection plan under which the Shuler plant was targeted for inspection based on high health hazard potential. When the health officer presented his credentials and explained his purpose to the person in charge at the Shuler worksite, he was denied access to the premises. In accordance with regulations of the department of labor, the officer reported the refusal to the commissioner. *See* 530 Iowa Admin.Code 3.2(1).

As authorized by the regulation, the commissioner sought an administrative warrant in order to carry out the inspection. The regulation provides in part: "The labor commissioner shall promptly take appropriate action, including compulsory process, if necessary." Compulsory process is defined in the regulations to mean "the institution of any appropriate action, including ex parte application for an inspection warrant or its equivalent." *Id.* at 3.2(3). The regulation also provides: "Ex parte inspection warrants shall be the preferred form of compulsory process in all circumstances where compulsory process is relied upon to seek entry to a workplace under this rule."

Thus no question exists of the commissioner's authority to inspect or to seek compulsory process to enforce the inspection right. For present purposes the regulations have the force of statute. *See Milholin v. Vorhies,* 320 N.W.2d 552, 553 (Iowa 1982). Furthermore, no question should exist of the legislature's intention that inspections be made whether the person in control of the premises consents or not. Otherwise the purposes of the statute would be frustrated.

The only issue in *Marshall v. Barlow's, Inc.* was whether forced inspections could be made under the federal counterpart of our statute without an administrative warrant. The Supreme Court held that an administrative warrant, or its functional equivalent, is required by the fourth amendment. *See* 436 U.S. at 325, 98 S.Ct. at 1826–27, 56 L.Ed.2d at 319. No such constitutional problem exists in the present case, because the regulations mandate the obtaining of an administrative warrant before a forced inspection can be made.

The Secretary of Labor sought in *Barlow's* to avoid having to use authority to seek compulsory process provided in a regulation like that in this case. *See id.* at 325 n. 23, 98 S.Ct. at 1827, 56 L.Ed.2d at 319 ("[T]he Secretary has limited his submission in this case to the constitutionality of a warrantless search of the Barlow establishment authorized by § 8(a). He has expressly declined to rely on 29 CFR § 1903.4 (1977) and upon the order obtained in this case."). In the present case the Iowa com-

missioner sought to do exactly what the Supreme Court requires and the Iowa regulations authorize.

The only question here is whether the district court has authority to issue the required warrant. This question was addressed in *Marshall v. Huffhines Steel Co.*, 478 F.Supp. 986 (N.D.Tex.1979), under the analogous federal OSHA statute. In holding that the authority to inspect carried with it implied judicial authority to issue warrants for forced inspections, the court reasoned: "To interpret the statute to mean that warrants are constitutionally required but that the courts lack the jurisdiction to issue them would be to render the statute meaningless and to undermine Congress' stated objectives. This court is unwilling to so hold." *Id.* at 988. The same conclusion was reached by the court in *Empire Steel Mfg. Co. v. Marshall*, 437 F.Supp. 873, 881 (D.Mont.1977). Because our statute is based on the federal model, the federal court interpretations constitute persuasive authority for giving a similar interpretation to our statute. *See Hubbard v. State*, 163 N.W.2d 904, 909 (Iowa 1969). We recently recognized our duty in construing statutes to assume the legislature intended them to have an intelligent and meaningful purpose. *See In re Girdler*, 357 N.W.2d 595, 597 (Iowa 1984).

This is not a problem of legislative failure to correct a constitutional infirmity. Rather it is a case in which the legislature has granted authority by implication instead of by express grant. Exactly the same situation is presented in Code section 83.13(1) in which forced inspection of coal mines is provided for upon warrants obtained by the attorney general. No express grant of judicial authority to issue the warrants is made. The authority to do so plainly arises by implication. Moreover, it is not accurate to say that federal decisions are distinguishable because they rely on Federal Rule of Criminal Procedure 41(h) for warrant authority. Rule 41(h) merely provides in relevant part that rule 41 does not override any special statutory provisions allowing searches in other situations. The provision for inspections in the federal OSHA statute is such a special provision. *See Marshall*, 478 F.Supp. at 989. Section 88.6(1) in our statute is also such a provision. The federal rule would be relevant here only if a contention were made that the absence of similar language in Code section 808.2 makes section 808.2 exclusive authority for search warrants in Iowa. No such contention has been made. Nor would such a contention be tenable in view of specific subsequent legislation providing for an administrative warrant for forced inspections under the controlled substances statute. *See* § 204.501.

The federal courts have not doubted their authority to issue inspection warrants. A division of opinion existed previously concerning whether they could issue them ex parte in the absence of a statute or regulation providing for ex parte warrants. The question was settled in *Barlow's* in favor of authority to issue ex parte warrants. *See In the Matter of Establishment Inspection of Keokuk Steel Castings*, 493 F.Supp. 842, 845–46 (S.D.Iowa 1980). The question is answered in Iowa by the regulation authorizing ex parte warrants. *See* 530 Iowa Admin.Code 3.2(3).

I would hold that the Iowa district court has authority to issue search warrants for inspections by the commissioner of labor pursuant to section 88.6(1). Such warrants may issue only in accordance with the standard in *Barlow's* and *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). No state policy decisions are implicated. The General Assembly has defined the relevant policy in chapter 88. That policy includes forced inspections of worksites. The courts are asked only to determine whether a proposed forced inspection meets the reasonableness standard of the fourth amendment of the United States Constitution. If an inspection passes muster under *Barlow's* and *Camara*, it is reasonable. Warrant procedure under state law is not an issue. *See Owens v. City of North Las Vegas*, 85 Nev. 105, 107, 450 P.2d 784, 786 (1969).

Statutory limitations independently require that the entry be made "at reasonable times" and that the inspection or investigation be made "during regular working hours and at other reasonable times, and within reasonable limits and within a reasonable manner." § 88.6(1). Because no inspection is lawful unless it meets both the constitutional and statutory standards, the function of a warrant is merely to allow the commissioner to carry out his carefully circumscribed responsibilities over the objection of the person in control of the premises.

This court confronted analogous issues in *Forst v. Sioux City*, 209 N.W.2d 5, 8 (Iowa 1973), and *Auxier v. Woodward State Hospital School*, 266 N.W.2d 139, 142–43 (Iowa 1978). In each case the court recognized its duty to spell out procedures that were essential to the constitutional operation of statutes. In doing so the court did no more and no less than give effect to its own constitutional role, in *Forst* as expositor of the Constitution of Iowa and in *Auxier* as expositor of the United States Constitution.

REYNOLDSON, C.J., and HARRIS and LARSON, JJ., join this dissent.