(893 P.2d 848)
No. 72,457

CITY OF OVERLAND PARK, KANSAS, *Appellee*, v. BRYAN NIEWALD and TODD JUNG, *Appellants*.

Opinion filed April 14, 1995.

*Todd Jung* and *Bryan Niewald*, appellants pro se.

*J. Bart Budetti,* senior assistant city attorney, for appellee.

Before LARSON, P.J., RULON and PIERRON, JJ.

RULON, J.: Bryan Niewald and Todd Jung, defendants, challenge the district court's jurisdiction over, and the constitutionality of, the issuance of an administrative search warrant allowing the City of Overland Park, plaintiff, to inspect defendants' business for compliance with municipal fire codes. We affirm.

The facts in this case are not in dispute.

Defendants own Central Video Services in Overland Park and refused to allow plaintiff's fire department into their building to inspect for compliance with city fire codes. Upon defendants' refusal to submit to a fire inspection, plaintiff filed a petition in district court asking for an administrative search warrant to allow the City to inspect defendants' business.

Defendants filed a pro se answer challenging the district court's jurisdiction over the matter and generally stating that there was no statutory authority for such a warrant. Defendants further contended if such authority existed, there was no probable cause to issue a warrant. Defendants filed a counterclaim seeking a permanent injunction preventing plaintiff from inspecting their business.

The district court ruled that the challenged city ordinance was constitutional and enforceable against the defendants. The court granted the plaintiff's motion for summary judgment and held that a warrant to enforce the annual fire inspection would be issued to the City.

## JURISDICTION

Defendants argue the district court did not have jurisdiction because this was a suit in equity and the plaintiff had not shown a concrete harm or an injury in fact. Defendants contend that absent proof of the court's jurisdiction, the district court did not have jurisdiction and, therefore, the court's order is void.

Article 3, § 6 of the Kansas Constitution provides that the district courts shall have such jurisdiction as may be provided by law. K.S.A. 20-301 states that the district courts "shall have general original jurisdiction of all matters, both civil and criminal,

unless otherwise provided by law." Defendants cite no authority indicating that the legislature has enacted provisions excluding an action such as this from the district court's jurisdiction. Consequently, the plain language of the statute indicates that the district court shall have jurisdiction unless the legislature provides that it does not or that jurisdiction lies elsewhere. See *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 496-97, 630 P.2d 186 (1981).

Here, plaintiff was seeking an administrative search warrant to allow inspection of the defendants' building in order to determine compliance with an Overland Park city ordinance. By statute, the municipal court could not issue such a warrant. See K.S.A. 12-4104. Necessarily, absent any limiting statute, the issuance of an administrative search warrant is within the general jurisdiction of the district court.

## ADMINISTRATIVE SEARCH WARRANTS

Defendants next claim that because there is no statutory authority for issuance of an administrative search warrant, the district court was required to apply K.S.A. 1994 Supp. 22-2502, which mandates a showing of probable cause before issuing the warrant. Defendants contend, because the plaintiff admitted that it had no probable cause to believe that the defendants' property was in violation of any fire code, the district court had no basis to issue a search warrant. We disagree.

The Fourth Amendment to the United States Constitution is identical in scope to § 15 of the Bill of Rights of the Kansas Constitution; both prohibit unreasonable searches and seizures. *State ex rel. Love v. One 1967 Chevrolet*, 247 Kan. 469, 476, 799 P.2d 1043 (1990). Consequently, United States Supreme Court decisions discussing the constitutionality of administrative searches are persuasive.

Two of the seminal cases dealing with administrative search warrants are *Camara v. Municipal Court*, 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967), and *See v. City of Seattle*, 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967). The *Camara* Court held that administrative searches of dwellings were significant intrusions upon the interests protected by the Fourth

Amendment and that such searches conducted without warrant procedures lacked the traditional safeguards guaranteed by the Fourth Amendment. 387 U.S. at 534. However, such a finding was only the beginning of the analysis. Because the governmental interest in administrative searches is simply to prevent conditions which constitute hazards to public health and safety, the intrusiveness of such searches must be weighed in terms of the reasonable goal of enforcement of safety codes. 387 U.S. at 534-35. The Court went on to hold:

" '[P]robable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based on the passage of time, the nature of the building . . ., or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling." 387 U.S. at 538.

The *Camara* Court further noted that such programs have a long history of judicial and public acceptance and that no other technique would be practical to insure that all dangerous conditions are prevented. "Many such conditions—faulty wiring is an obvious example—are not observable from outside the building and indeed may not be apparent to the inexpert occupant himself." 387 U.S. at 537.

Similarly, and more on point, in *See v. City of Seattle*, the Court considered the same question as in *Camara*, but in the context of a commercial warehouse owner who denied a city inspector access to his building because the inspector did not have a warrant and did not have probable cause to believe a violation of any ordinance existed. The *See* Court concluded the businessperson, like the occupant of a residence, has a constitutional right to be free from unreasonable official entries upon his or her private commercial property. 387 U.S. at 543. The Court concluded that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." 387 U.S. at 545. The Court was careful to note that it was not implying that business premises

could not reasonably be inspected in more situations than private homes, nor did it question the use of licensing regulations which require periodic inspections as a condition of licensing. 387 U.S. at 546. In a later case, the Court noted that inspections of commercial property may be unreasonable if the inspections are so random, infrequent, or unpredictable that the owner has no real expectation that his or her property will periodically be inspected. *Donovan v. Dewey*, 452 U.S. 594, 599, 69 L. Ed. 2d 262, 101 S. Ct. 2534 (1981).

Only one Kansas case has specifically dealt with administrative searches. In *State v. Marsh*, 16 Kan. App. 2d 377, 823 P.2d 823 (1991), this court addressed the issue of the circumstances under which a warrantless administrative search may be carried out. However, the *Marsh* analysis is only relevant to warrantless search cases involving closely regulated businesses. Here, there is no indication the defendants' business is a closely regulated industry.

Several other states have addressed the issuance of administrative search warrants. In *Owens v. City of North Las Vegas*, 85 Nev. 105, 450 P.2d 784 (1969), the defendant challenged the validity of an administrative search warrant because the state statute authorizing search warrants did not specifically authorize such a warrant. The *Owens* court stated: "The question is not whether the search was authorized by our state law. The question is, rather, whether the search was reasonable under the Fourth Amendment to the United States Constitution." 85 Nev. at 107. The *Owens* court relied upon the *Camara* analysis and concluded that the search met the standard of reasonableness.

In *Accident Prevention Division v. Hogan*, 37 Or. App. 251, 586 P.2d 1132 (1978), an accident prevention officer tried to inspect the workplace of the defendant but was denied access to the premises. The officer subsequently obtained a warrant and inspected the business. Hogan challenged the citations that were issued as a result of the inspection, claiming the affidavits that were presented to the judge who issued the warrants were insufficient to establish probable cause. The *Hogan* court, quoting *Camara*, noted that probable cause in a criminal sense was not required. The Oregon Court of Appeals ruled that the amount

of evidence necessary to show probable cause would depend on the nature of the intrusion and its potential consequences. "Where, as in the administrative inspection area, the inspection will be without potential criminal consequences, issuance of a warrant will be justified without any showing of a history of wrongdoing so long as there are 'reasonable legislative or administrative standards.' [Citations omitted.]" 37 Or. App. at 257.

In *Seattle v. Leach*, 29 Wash. App. 81, 627 P.2d 159 (1981), the owner of an apartment building sought review of her municipal court conviction for violations of city fire codes. The violations were discovered during an inspection conducted pursuant to an administrative search warrant. The *Leach* court adopted the analysis set out in *Camara* and *See* and concluded that a lesser degree of probable cause is necessary to support an administrative search warrant than is required in a criminal case. "An administrative inspection warrant may be based on either (1) specific evidence of an existing violation, or (2) a general inspection program based on reasonable legislative or administrative standards derived from neutral sources." 29 Wash. App. at 84. However, the *Leach* court concluded the affidavit supporting the warrant was not sufficient because it failed to describe the program for inspection in sufficient detail to allow a detached and neutral magistrate to determine there was a reasonable legislative or administrative inspection program and that the desired inspection fit within that program. 29 Wash. App. at 85. Consequently, the *Leach* court reversed the defendant's conviction because the conviction stemmed from the illegal inspection.

In Kansas, the issuance of search warrants in criminal cases is governed by K.S.A. 1994 Supp. 22-2502. That statute provides in relevant part: "(a) A search warrant shall be issued only upon the oral or written statement . . . of any person under oath or affirmation which states facts sufficient to show probable cause that a crime has been or is being committed."

Here, the district court ruled that K.S.A. 1994 Supp. 22-2502 was inapplicable and did not limit the court's jurisdiction to issue an administrative search warrant. We are convinced, however, based on the analysis found in *Camara* and *See*, that the existence

of an administrative policy or ordinance which specifies the purpose, frequency, scope, and manner of the inspection provides a constitutional substitute for probable cause that a violation has occurred. No statute exists in the Code of Civil Procedure which authorizes administrative search warrants. We conclude that, under the provisions of K.S.A. 1994 Supp. 22-2502, prior to issuing an administrative search warrant, a magistrate or district judge is required to find the pertinent regulation meets the requirements established in *Camara,* thus providing probable cause to issue the warrant.

The parties here stipulate that plaintiff has a municipal ordinance which calls for the annual inspection of all businesses to check for violations of the City's fire prevention code. The purpose of the code is to ascertain and correct any conditions that could contribute to the spread of fire or interfere with firefighting operations. The code provisions before us here meet the *Camara* criteria of a valid administrative regulation which provides for inspections pursuant to a legitimate government policy and calls for inspections to be carried out on a regular, periodic basis to insure compliance with city fire codes.

As we understand, plaintiff does have an administrative plan that calls for annual inspections. We are convinced the district court was correct in finding that the administrative search warrant was constitutional even though the court erroneously concluded probable cause was not required. "The judgment of a trial court, if correct, is to be upheld even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. [Citations omitted.]" *State v. Wilburn,* 249 Kan. 678, 686, 822 P.2d 609 (1991).

## ENFORCEABILITY OF ORDINANCE

Defendants argue that the plaintiff's fire code is not applicable to them. Specifically, defendants claim that because § F-101.1 of the fire code states that the code is not applicable to existing conditions which do not constitute a distinct hazard to life or property, absent a showing their property constitutes a distinct hazard to life or property, plaintiff has no authority to conduct

an inspection. The BOCA Fire Prevention Code was adopted by reference in the City of Overland Park's municipal ordinance BC-FP-1671 and 1720. Overland Park, Kan., Municipal Code § 16.14.010 (1992). (BOCA stands for Building Officials & Code Administrators International, Inc.).

Defendants' argument is similar to the previous issue; whether the plaintiff needed probable cause to seek a search warrant.

Section F-101.1 reads:

"The provisions of this code and the building, mechanical and plumbing codes listed in Appendix A shall apply equally to new and existing buildings and conditions.

"**Exceptions**

"1. Existing conditions which do not constitute a distinct hazard to life or property."

Defendants correctly quote the fire code but fail to recognize the difference between an existing condition and an existing structure. An existing structure may have existing conditions that are not visible from the outside and thus without inspection could not be discovered to constitute a hazard to life or property. Also, § F-101.4.1 provides that when any provision of the code is found to conflict with another provision of the code, the provision which establishes the higher standard for promotion and protection of the safety and welfare of the public shall prevail. Also, § F-107.3 gives code officials the right to enter any premises either for purposes of enforcing the code *or* when the official has reasonable cause to believe a condition exists which makes the premises unsafe. These two sections arguably give inspectors the right to enter a building to check for code compliance to insure that no condition exists which is a fire hazard. While § F-107.3 appears in conflict with the language in § F-101.1, its terms establish procedures which promote and protect the safety of the public and, therefore, pursuant to § F-104.1, an inspector may enter an existing structure to determine if an existing condition violates the fire code or poses a threat to public safety.

## RIGHT TO CONTRACT

Defendants make a final argument that they are not bound by

the plaintiff's fire code because such constitutes an adhesion contract between defendants and plaintiff's fire department. Defendants claim that such a contractual arrangement forces them to allow the fire department onto their property, thereby exposing them to liability "engendered by the terms of that contract." Defendants cite no authority for this argument. Defendants further fail to provide a copy of any contract between plaintiff and the fire department which would substantiate their claim that they are somehow exposed to liability by its terms. Defendants have the burden to designate a record to substantiate their claim of error. See *State v. Gonzales*, 245 Kan. 691, 699, 783 P.2d 1239 (1989). Absent a showing they could be harmed in any way, defendants' claim fails.

Affirmed.